J. P. SMITH ET AL. v. J. W. WILSON AND BOATMAN SAVINGS BANK,
FOR USE OF F. M. DOUGHERTY.

No. 7.

1. **Practice — Special Exceptions to Pleadings.**—Special exceptions to the form of the adversary pleadings come too late after there has been a trial and a continuance of the case at a former term without objection on this account.

2. **Practice—Immaterial Error.**—Reading to the jury a portion of the pleadings to which exceptions have been sustained is a practice not to be commended; but *held*, in this case not to constitute reversible error.

3. **Evidence—Written Instruments—Objection as to Effect of.**—An objection to written instruments, going rather to their effect than to their admissibility, *held*, not a tenable ground for excluding them when offered in evidence. See the facts.

4. **Evidence—Privileged Communication.**—A confidential communication between attorney and client is the privilege of the client; and where he does not object to evidence on this ground, his antagonist in the litigation can not urge such client's privilege against the evidence.

5. **Evidence—Verbal Act—Res Gestæ.**—Where the proof shows the deposit of notes with an attorney, statements as to the purpose for which they are so deposited, made at the time and by the person depositing them, are not hearsay, but are verbal acts coming clearly within the rule on that subject.

6. **Notice to Attorney Binding on Client, when.**—Notice to either member of a firm of attorneys is binding on their client where it relates to a matter contemplated in the scope of their employment; and knowledge of the attorney as to such matter is imputed to the client.

7. **Charge of the Court — Different Theories of the Case.**—Where the evidence is conflicting, the defendant is entitled to a charge pertinently submitting his theory of the case to the jury.

8. **Agent of Corporation — Officer Acting in Dual Capacity.**—Where one who is an officer of an incorporated bank acts in a given matter in behalf of the bank, his acts are binding on the corporation, although at that time and in the same matter he may have been acting also in his individual inerest.

9. **Principal and Agent—Acts Binding, when—Ratification.**—The tendency of modern decisions is rather toward a restriction than an extension of the doctrine of implied or constructive notice in respect to agency; and in this case the knowledge of a subagent, whose appointment the principal had not authorized, is not imputed to the principal because of an act of the principal having some of the features of a ratification.

10. **Scire Facias to Revive Judgment — Offsets and Defenses — Fact Case.**—See this case for an action to revive by scire facias certain judgments that had been transferred, and involving in its defense questions as to offset, collateral security, and insolvency.

APPEAL from Cooke.　Tried below before C. B. STUART, Esq., Special Judge.

The opinion states the case.

*Davis & Harris*, for appellants.—1. The court erred in overruling the defendants' four special exceptions to the scire facias and application to

revive the judgments. McFadden v. Lockhart, 7 Texas, 573, 575; State v. Cox, 25 Texas, 406; Perkins v. Hume, 10 Texas, 50; Hopkins v. Howard, 12 Texas, 8, 9; Firierson v. Harris, 94 Am. Dec., 235, and note.

2. The Stone Cattle and Pasture Company, or Dougherty, its assignee, was not entitled to be subrogated to the collateral security held by the Boatman Savings Bank until it had fully paid the principal debt. Brandt on Surety., secs. 261, 266; Sheld. on Sub., secs. 126, 128; Colb. on Col. Sec., secs. 129, 214; Jones v. Porter, 29 Texas, 456; Lucketts v. Townsend, 3 Texas, 119.

3. The court erred in permitting plaintiffs' counsel to read that portion of plaintiffs' supplemental petition to which exceptions had been sustained by the court, and in permitting the jury to take said supplemental petition with them in their retirement. Cooke v. Crawford, 1 Texas, 9, 11; Ritter v. Hamilton, 4 Texas, 328; Thomp. & M. on Juries, 458, 481, 494, 496.

4. The court erred in the fourth clause of the charge to the jury, because there was no evidence tending to prove any state of facts upon which J. P. Smith could be charged with the knowledge of J. H. Garnett; and also erred in excluding the proposed evidence of W. O. Davis. Meuley v. Zeigler, 23 Texas, 92; The Distilled Spirits, 11 Wall., 356; 2 Pome. Eq., sec. 668; Constat v. University, 7 Am. St. Rep., 769; 1 Greenl. Ev., sec. 108.

5. The court erred in refusing the third charge requested by defendants, viz.: "If you believe from the evidence that the said judgment in favor of Rollins was in fact owned by J. W. Wilson on the 2nd of March, 1886, and that said Wilson, acting for the said Stone Cattle and Pasture Company, transferred the two judgments sought to be revived to secure said judgment in the name of R. S. Rollins, you will find for the defendants, unless you believe from the evidence that said company, with knowledge of all the facts, has since ratified said transfer." Lang v. Dougherty, 74 Texas, 226; Sanger v. Upton, 91 U. S., 56, 60; Mora. on Priv. Corp., secs. 517, 520, 786, 802; Bump. on Fraud. Con., secs. 474, 476; Buck v. Albee, 62 Am. Dec., 564; Miners Co. v. Zellerback, 99 Am. Dec., 385, and note on the variance between the allegations and proof; 1 Greenl. Ev., sec. 68.

6. That portion of the fifth clause of the charge, to the effect that if H. Hulen employed J. W. Sacra to assist in buying the offsets, and that if the amount to be paid by Smith for the service was to be shared between them, and that this fact was known to J. P. Smith, or assented to by him, or if not known to him was afterward ratified or recognized by Smith, then Smith would be charged with and affected by the notice of Sacra, was erroneous and calculated to mislead. Hoover v. Wise, 91 U. S., 308; Wade on Notice, sec. 686; Bryant v. Moore, 26 Me., 84.

7. The court erred in the sixth clause of the charge to the jury, viz.: "If R. S. Rollins was vice president and director of the First National

Bank, and knew of the transfer to Dougherty from Wilson, and knew that Smith did not know of such transfer; and if said Rollins was present when J. P. Smith purchased or paid for the notes claimed as offsets herein, and was engaged at said time in his character as officer and director in transacting the business of the said bank, and did not disclose to Smith his knowledge, if any, of said transfer, then said offsets would be valid credits against the judgment herein sought to be revived; but if said Rollins was present at said purchase, transacting his own business, then his failure to disclose to Smith any knowledge of the transfer to Dougherty, if he had any such knowledge, would not affect the right of said bank in this cause." Blum v. Merchant, 58 Texas, 400; Morgan v. Railway, 96 U. S., 716; Bige. on Estop., 458, et seq.; Wade on Notice, sec. 691.

8. The court erred in refusing the first charge requested by defendants, viz.: "If the jury believe from the evidence that at the date of the alleged transfer of the two judgments sought to be revived to F. M. Dougherty the Stone Cattle and Pasture Company was insolvent and had ceased to carry on the business for which it was organized, and that said company has ever since been insolvent and is now owing large sums of money, and that said two judgments at the time of the alleged transfer constituted about all said company's available assests, you will find for the defendants." Lang v. Dougherty, 74 Texas, 226; Sanger v. Upton, 91 U. S., 60; Mora. on Corp., secs. 802, 803, 861, et seq.

9. The verdict of the jury is contrary to the evidence, because the evidence shows that the First National Bank of Gainesville and its vice president sold to J. P. Smith his offsets which were disallowed, knowing the purpose for which he was buying the same, and knowing that he was acting in ignorance of the assignments to F. M. Dougherty, and without notifying him of the said assignment. Rev. Stats., art. 267; Younger v. Welch, 22 Texas, 428; 2 Pome. Eq., sec. 703; Freem. on Judg., sec. 427; Wade on Notice, sec. 431. It was the duty of Dougherty to have notified Smith, Reed, and Thurmond of the assignment. Swearingen v. Buckley, 1 Posey's U. C., 421.

*Potter, Potter & Eddleman,* for appellees.—1. No written application or pleadings of any kind are necessary to authorize the issuance of the writ of scire facias to revive a judgment, and in such case it is only necessary that the writ should show a valid, unpaid, dormant judgment. Hopkins v. Howard, 12 Texas, 7; Bullock v. Ballew, 9 Texas, 499.

2. The proposed evidence of W. O. Davis was not admissible, the same being hearsay and a statement made out of court by his client to him when the appellees were not present, and would be permitting Smith to make evidence for himself. 1 Greenl. Ev., 99, and note.

3. Notice to an agent is notice to a principal. Wade on Notice, sec. 672. Notice to one of several agents is sufficient. Id., 681, and note.

Knowledge acquired during agency is conclusively presumed to have been communicated to the principal.    But if acquired before the employment, the knowledge must have been present in the mind of the agent at the very time of the employment or transaction, unless the two acts are so near each other that the court can not presume that a man could have forgotten the one before the other transpired.    Wade on Notice, sec. 688; Mech. on Agency, sec. 721; Ewell's Ev. on Agency, note 1, p. 187; Distilled Spirits, 11 Wall., 367.    And this rule applies with as much force to attorneys at law as any other character of agents.    Abell v. Howe, 43 Vt., 403; Hunter v. Watson, 12 Cal., 377; 73 Am. Dec., 543; Artswell v. North, 144 Mass., 188; Dickenson v. Bowers, 42 N. J. Eq., 295.    As to constructive notice to agents:    2 Pome. Eq., 666, 667, 669, and note; Wade on Notice, secs. 672, 685; 76 N. Y., 397; James v. Vamford, 21 Iowa, 217.

4.  J. W. Sacra being a partner of Hulen at the time that Smith made the agreement with Hulen for the purchase of the offsets that Smith was to use toward paying the judgments against him, and Sacra having aided toward that end, and Smith, after knowing the facts, having ratified Sacra's connection with the transaction by paying him his part of the ill-gotten gain, would constitute Sacra the agent of Smith from the beginning.    Wade on Notice, sec. 681, and note; Story on Agency, 454, et seq.; Ewell's Ev. on Agency, 85; Fulton v. Bank, 4 Paige, 127; Bank v. Aymar, 3 Hill, 262.    On question of ratification:    Wade on Notice, sec. 691, and notes; Mech. on Agency, secs. 164, 167, 175.    Partnerships may act as agents. Id., 65.

5.  If J. P. Smith and his admitted agent, Hulen, did not have actual notice of the transfer of the judgments to Dougherty, they had notice of facts that would put a prudent man on inquiry leading to the truth.    Littleton v. Giddings, 47 Texas, 112; Brunett v. Buchanan, 76 N. Y., 390.

6.  The judgments here in controversy having been assigned by Wilson for the Stone Cattle and Pasture Company to Dougherty to secure the payment of the note of $18,181.90, due by the company to the First National Bank, of which Dougherty was president, the same was valid, and it is immaterial what the judgment in favor of Rollins against the company was transferred to Dougherty for, or upon what claim the lawyers sued out the garnishment.    Lang v. Dougherty, 74 Texas, 226; Wood's Field on Corp., secs. 171, 173, and note; Mora. on Corp., sec. 252; Boone on Corp., 144.

7.  The right of the officers of one corporation to transfer its property in payment of or as security for an honest debt due another corporation in which such officers may also be interested, can not be doubted.    But if question can be made of such right, it can only be raised by a member of the first corporation or that corporation itself; and in no event can a party who was not interested in the first corporation and not a creditor of

the same at the time of the transfer be heard as to the bona fides thereof. Mora. on Corp., secs. 578, 582, and note; McClenney v. McClenney, 3 Texas, 192.

8. The judgments here sought to be revived having been rendered upon notes placed with Rollins to secure him and the Stone Cattle and Pasture Company as endorsers for Dabbs & Co. and Fore, Morphy & Henderson on the old Dabbs & Co. judgment in favor of the Boatman Savings Bank, and the company's property having been sold to pay a large amount of said judgment, and Rollins having been released therefrom, the company had the right to transfer the collateral to Dougherty; and Smith having pleaded that said judgments were the property of the Stone Cattle and Pasture Company, is now estopped to claim that they belonged to any one else. Brandt on Surety., secs. 177, 192, 193, and notes; Coleb. on Col. Sec., secs. 223, 224, and note; Harris' Law of Sub., 259, note; Hollinsworth v. Floyd, 2 Har. & G., 88; Watkins v. Worthington, 2 Bland, 509; Sayles' Civ. Stats., art. 2245, Estoppel.

STEPHENS, ASSOCIATE JUSTICE.—This appeal is prosecuted by J. P. Smith, J. D. Reed, and E. G. Thurmond, from a verdict and judgment rendered in the District Court of Cooke County, on the 22nd day of November, 1889, in favor of F. M. Dougherty, in the sum of $3257.72, reviving to that extent and for the use and benefit of said Dougherty two certain judgments against appellants, the one in favor of the Boatman Savings Bank and the other in favor of J. W. Wilson, which judgments so revived were rendered in the District Court of Cooke County in the year 1885, in the aggregate sum of about $16,000.

In the year 1885 the Boatman Savings Bank recovered a judgment in the District Court of Cooke County against J. W. Dabbs & Co., and Fore, Morphy & Henderson, as principals, and the Stone Cattle and Pasture Company, R. S. Rollins, and others, as endorsers, in the sum of twenty thousand and some hundred dollars. Fore, Morphy & Henderson delivered to said Rollins, in order to protect said cattle company and Rollins and others as endorsers, two certain notes, executed by appellants, upon which the judgments sought to be revived by this suit were rendered. These notes were to be collected and the proceeds applied to the payment of said original judgment in favor of the Boatman Savings Bank, and were afterwards placed in judgments by the attorneys for said Boatman Savings Bank, under the direction of said Rollins; the one in the name of said bank, and the other, for convenience, in the name of J. W. Wilson, who was president of said cattle company. After these judgments were all obtained, in the latter part of the year 1885 said cattle company became insolvent. On the 2nd day of March, 1886, said cattle company, through J. W. Wilson, its president, assigned the two judgments sought to be revived in this suit to F. M. Dougherty, who was president of the First

National Bank of Gainesville. It is alleged in the pleadings both of appellants and appellees that at that date said judgments were owned by said cattle company, though subject to the rights of said Boatman Savings Bank. Under said original judgment in favor of the Boatman Savings Bank, in the months of February, March, and June, 1886, certain lands of said cattle company were sold at execution sale and the proceeds applied as credits upon said original judgment. The sales in February and March reduced the amount due on the same to about $8000, and the June sale to about $6000. The collateral judgments were allowed to become dormant. When the cattle company became insolvent it was indebted to the First National Bank of Gainesville, by note, in the sum of about $18,000, which was secured by mortgage on cattle to the extent of about $16,000. In the month of January or February, 1886, appellant Smith undertook to procure at a discount debts against the insolvent cattle company in amount sufficient to offset the two collateral judgments, and engaged one Hulen, a director in the cattle company, to assist him, or to procure them for him, agreeing to pay him one-half of what Smith might save in offsetting said judgments. He succeeded in obtaining for Smith four notes against the cattle company; one in February, 1886, called the McAdams note, for about $10,000, less a credit of some $3000; the other three in May, 1886, called the McCubbins and Rolls notes, for less amounts, the purchase being made on the 20th and the purchase price paid on the 28th of May. The McAdams note and the balance due on the original Boatman Savings Bank judgment were allowed in the court below as offsets, and the other notes were rejected. Hulen procured one Sacra, vice president of said cattle company, to assist him in obtaining said notes for Smith, which he did to the extent of giving information as to where and how to find them—Hulen agreeing to pay him one-half the profit or compensation coming to him under the arrangement with Smith.

In September, 1886, at the request of Hulen, Smith paid one-half of the sum promised Hulen to Sacra; and the proof tended to show that prior to this time Smith had no knowledge of the employment of Sacra by Hulen. The proof failed to show that either Smith or Hulen had actual knowledge of the transfer of the judgments to Dougherty until after the offsets had been acquired, though Sacra did have such knowledge at the time of the transfer. The record discloses that some, if not all, of the notes pleaded as offsets were placed in the hands of W. O. Davis, Esq., by Smith and Hulen, in February, 1886, and that the McCubbins and Rolls notes were on the 20th day of May, as well as prior thereto, in some way pledged as collateral security to R. S. Rollins, vice president of said First National Bank of Gainesville, and J. M. Lindsay, an officer of Gainesville National Bank, to secure to said two banks debts due to them severally.

A judgment was obtained in the District Court of Cooke County against said cattle company in favor of R. S. Rollins on the 22nd day of December,

1885, for about $30,000, based upon two certain notes payable to Wilson & Hearne, signed by J. W. Wilson as president of said cattle company, and John H. Stone, secretary, endorsed by Hearne to J. W. Wilson and by Wilson to Rollins; and said judgment was on said 2nd day of March, 1886, assigned by Rollins to Dougherty. On the same day said F. M. Dougherty, through J. H. Garnett, Esq., law partner of W. O. Davis, caused a writ of garnishment to issue against appellants, and contemporaneously therewith said Wilson, at the suggestion of said Garnett, made the assignment of said other judgment as above stated.

There is much diversity disclosed in the record among the witnesses with reference to the ownership, history, use, and purpose of this $30,000 judgment. The record discloses that J. W. Wilson was indebted to Dougherty individually in the sum of about $10,000. On the 20th of May, 1886, when the rejected offsets were purchased by Smith, there were present in the office of Davis & Garnett, Messrs. Garnett, Smith, Hulen, and Rollins, there being a conflict in the evidence as to whether or not Sacra was there. At this meeting Smith paid balance due on, and obtained assignment of, the original judgment in favor of the Boatman Savings Bank. Nothing was said about the assignment of the collateral judgments against appellants at this meeting, and Smith seems to have been ignorant of that fact, and perhaps also Hulen, though the fact was known to Rollins, who was vice president of said First National Bank, and who was released by Smith as endorser on said original judgment, in which matter he appears to have been acting for himself; but in the matter of the sale of said notes to be used as offsets he seems to have acted in behalf of said First National Bank, of which he was an officer, though not actively engaged in its service, the money realized from the sale of said notes to Smith being in part paid to said bank by him. He states that Smith, or Hulen in Smith's presence, then and there agreed to pay the balance due on said First National Bank debt after the cattle mortgaged to it should be applied thereto, there being an estimated balance of $1800 or $2000, and that he would not have acted as he did in selling said offsets but for this promise on Smith's or Hulen's part. Smith and Hulen state that the promise was conditioned upon the Wichita sale reducing the amount due Smith on the original judgment to such an extent as to leave a balance of $1800 or $2000 due on the collateral judgments, after applying all offsets. It is also disclosed that the first notice that Garnett had of the notes being left with his partner was on the 2nd day of March, 1886, just after he drew up the garnishment papers, and that he did not inform Davis of the existence of the assignment of the judgments, and that this fact was not present to his mind until recalled, long after this transaction.

The evidence as to the purpose of the assignment of the judgments sought to be revived tends to different conclusions. The theory of appellees, which has support in the record, is that these judgments were

assigned for the purpose of securing the $18,000 debt due the First National Bank. There is some evidence tending to show that they may have been assigned to secure the $30,000 Rollins judgment, or, in part, the debt of J. W. Wilson.

On the 8th of April, 1888, appellee Dougherty, through his attorneys, filed an application for scire facias to revive the two judgments herein. After the two writs were served on appellants the causes were on their motion, at the April term, 1889, consolidated; at which term of the court there was a trial of this cause without any exceptions having been taken to the form of said application or scire facias. A new trial being granted at the November term of said year, appellants, for the first time, filed exceptions to the form of said application and scire facias, which were overruled and exceptions reserved.

The first, second, third, and fourth assignments of error complain of the action of the court in overruling appellants' special exceptions to the scire facias and application therefor upon which this suit is founded.

These exceptions relate to the form of the pleadings complained of, and we are of opinion that the court did not err in overruling them; they came too late after there had been a trial and continuance of the cause at the former term without any objection having been made to said scire facias and application.

The fifth assignment complains of the action of the court in permitting certain allegations of fraud and conspiracy in the supplemental pleadings of appellee to be read to the jury after the exceptions of appellants had been sustained thereto. We think this practice is not to be commended; but, under the circumstances disclosed in the record, no reversible error was committed.

The sixth and seventh assignments complain of the admission in evidence of the assignment of the two judgments sought to be revived in this suit, because it was not alleged and shown that J. W. Wilson had any interest in or authority to transfer the judgment in the name of the Boatman Savings Bank, or that the Boatman Savings Bank was not the owner thereof, because the transfer of the other judgment to Dougherty was made subject to the rights of the Boatman Savings Bank and it was not shown that it had parted with its interest in said judgment. These judgments and the assignments thereof were sufficiently identified by the scire facias to admit them in evidence, and we are of opinion that the objections raised related rather to their effect than to their admissibility, and that the court did not err in this respect.

The tenth assignment complains of the exclusion from the jury of certain testimony which witness W. O. Davis proposed to give in response to a question propounded to him by appellants. After he had testified that J. P. Smith called at his office and left with him the notes relied upon

as offsets in this case, or at least some of them, he was asked by appellants' counsel to state for what purpose J. P. Smith left the notes with him; and having answered that he did not know except from what J. P. Smith said at the time of leaving the notes, the appellants' counsel then asked him to state what Smith said when he left the notes as to his object or purpose in leaving them, expecting to prove that Smith said he left said notes for safe keeping only and to be held by Davis until Smith should call for them. This testimony was objected to by appellee, because, first, Smith could not make evidence for himself; second, the witness had no right to detail a conversation with his client, and because said conversation was hearsay.

As this transaction occurred prior to the date of the transfer to the appellee of the judgment sought to be revived, we are unable to see how the statement by Smith could be deemed in any sense a self-serving declaration. The second objection, that he could not detail a conversation with his client, is equally untenable, because a confidential communication is the privilege of the client, and not of his antagonist in litigation. It is equally clear that the testimony was not hearsay, but a verbal act coming clearly within the meaning of the rule on that subject. It was contemporaneous with the main fact under consideration and was so connected with it as to illustrate its character. See Greenl. Ev., sec. 108. Appellee in his brief seeks to sustain this ruling on the ground that Smith and Hulen had both been on the stand and testified. We fail to find in their evidence any statement of Smith's purpose in lodging these notes with Davis. If they had testified at the trial that the purpose was to leave them for safe keeping, it seems to us that it would have been admissible to corrobarate their evidence by the declaration made at the very time the notes were deposited.

After a careful consideration of the complex issues disclosed in this record, we are unable to say that this error on the part of the court was not prejudicial to the rights of appellants. It became a material inquiry whether the knowledge on the part of Garnett of the transfer of the judgments in controversy should be imputed to Smith, on account of the alleged relationship of attorney and client between Davis and Garnett on the one hand and Smith on the other. Two theories were raised by the evidence and submitted by the court in his charge to the jury; the one that the relationship of attorney and client had been so established when the notes pleaded as offsets were placed in the hands of Davis; and the other, that they were not placed there to create or in virtue of said relationship, but for safe keeping only.

The fourteenth, fifteenth, sixteenth, twenty-third, and thirty-second assignments of error complain of charges given and refused upon the theory that this relation of attorney and client would, under the cir-

cumstances disclosed in the record, make Smith chargeable with the knowledge of Garnett.

We are of opinion that if this relation was created, and the scope of employment contemplated that they would act for Smith in asserting off-sets against said judgments assigned to Dougherty, notice at the proper time to either Davis or Garnett would be binding upon Smith, and hence we think that these assignments are not well taken.

The twentieth and twenty-first assignments complain of the refusal of the court to give the second and third requested instructions. We are not prepared to say that it was error to refuse said second instruction, but are of opinion that the third instruction was applicable to one theory of the case, and should have been given. It is as follows:·

"Third. If you believe from the evidence that the said judgment in favor of Rollins was in fact owned by J.W. Wilson, on the 2nd of March, 1886, and that said Wilson, acting for said Stone Cattle and Pasture Company, transferred the two judgments sought to be revived to secure said judgment in the name of R. S. Rollins, you will find for the defendants, unless you believe from the evidence that said company, with knowledge of all the facts, has since ratified said transfer."

The latter part of this requested instruction on the subject of ratification seems to us to add nothing to its force or value, and need not have been given. There was a conflict of evidence as to the ownership of the $30,000 judgment, obtained in the name of Rollins, and there was also some evidence tending to show that the judgments sought to be revived may have been assigned to secure the Rollins judgment; we think appellants were entitled to have their theory of the evidence submitted to the jury to disprove the case alleged by appellees.

By the eighteenth assignment complaint is made of the following charge, as quoted in appellants' brief:

"If R. S. Rollins was vice president and director of the First National Bank, and knew of the transfer to Dougherty from Wilson, and knew that Smith did not know of such transfer; and if said Rollins was present when J. P. Smith purchased or paid for the notes claimed as offsets herein, and was engaged at said time in his character as officer and director in transacting the business of the said bank, and did not disclose to Smith his knowledge, if any, of said transfer, then said offsets would be valid credits against the judgment herein sought to be revived; but if said Rollins was present at said purchase, transacting his own business, then his failure to disclose to Smith any knowledge of the transfer to Dougherty, if he had such knowledge, would not affect the right of said bank in this case."

Appellants requested charges upon that subject, and assigned errors upon the refusal to give them. We are of opinion that the evidence tended to prove that Rollins acted in a dual capacity at the meeting of

May 20, 1886. In so far as he sought to be relieved as endorser upon the original Boatman Savings Bank judgment, he was acting for himself; but in the matter of the sale of the offsets to Smith, a part of the purchase money for which he turned over to the First National Bank, he was acting in behalf of said bank; and that the charge should have submitted to the jury the theory of this dual capacity, or rather that if he was acting in behalf of the bank, and at the same time acting in his own interest, his acts would be binding upon the bank.

The charge copied in the transcript contains, after the words " transacting his own business," the following, " or was not in pursuance of his authority transacting the business of the bank, then," etc. While we think the use of "and" instead of "or" would have more clearly expressed the theory above indicated, we are of opinion that the jury probably understood the charge to mean what was doubtless intended to be expressed, and hence this assignment is not well taken. It may be that the court should have also submitted in connection with said charge some appropriate instruction, presenting the theory, as claimed by Rollins, that at the meeting on the 20th of May, 1886, said Smith promised to pay the balance due on the bank debt, and that but for this promise he would not have acted as he did; but this is a matter of which the appellants could not complain.

The proposition asserted by appellants in their nineteenth assignment, to the effect that the court should have charged that the insolvency of the Stone Cattle and Pasture Company prevented any preference of its creditors by its president, and therefore rendered invalid the assignment of said judgments to Dougherty, could not avail them in this suit, for the obvious reason that they do not seek an equitable distribution of its assets, but are striving earnestly to secure a preference over other creditors by offsetting the only valuable judgments owned by said company as assets with its greatly depreciated if not worthless paper at its face value. Lang v. Dougherty, 74 Texas, 226.

The thirty-fifth assignment, by which complaint is made that the court should have charged to find for defendants, because the proof showed that the judgments sought to be revived were owned by the Boatman Savings Bank as collateral security, and the debt for which they were pledged was owned by defendant Smith, and plaintiff had not redeemed or offered to redeem said collateral securities, is equally untenable. Appellants, under the facts disclosed in this record, can not invoke this principle.

The seventeenth assignment is as follows: " That portion of the fifth clause of the charge to the effect, that if H. Hulen employed J. W. Sacra to assist in buying the offsets, and that if the amount to be paid by Smith for the service was to be shared between them, and that this fact was known to J. P. Smith or assented to by him, or, if not known to him, was afterward ratified or recognized by Smith, then Smith would be charged

with and affected by the notice of Sacra, was erroneous and calculated to mislead.''

This assignment presents to us the question of greatest difficulty in the case. It is assumed by the parties to this litigation that the transaction between Smith and Hulen established the relation of principal and agent between them. It is contended by appellee that the transaction between Hulen and Sacra, coupled with the fact that Smith paid to Sacra, at the instance of Hulen, one-half of the sum of money he had agreed to pay Hulen, rendered Sacra also the agent of Smith, and hence that the knowledge on Sacra's part of the assignment of the judgments sought to be revived should be imputed to Smith, though he had acquired title to the offsets prior to his knowledge of the fact that Sacra was in any way interested with Hulen in the matter. He relies upon the principle, which is well sustained by authority, that if one without authority assumes to act as the agent of another, and the latter takes the benefit of the unauthorized act by claiming rights under it or otherwise ratifying it, he must take such benefit charged with notice of such matters as appear to have been within the knowledge of the unauthorized agent at the time of the transaction. On the other hand, it is contended that the doctrine, which is also sustained by authority, that if the subagent be the agent of the agent merely, then there is no privity between him and the principal, and his knowledge can not be imputed to the principal, is applicable to the facts of this case. We have been cited to no case directly in point; and as the tendency of modern decisions is rather toward a restriction than an extension of the doctrine of implied or constructive notice in respect to agency, we are of opinion that the charge, in so far as it instructed the jury on the subject of ratification and notice as a result therefrom, was not applicable to the facts of this case. It seems to us, that when Smith purchased and paid for the notes in ignorance, as claimed by him, of the connection of Sacra with the matter, his rights were fixed and should not be prejudiced by the fact that afterward, upon the request of Hulen, he paid to Sacra one-half the sum he had agreed to pay Hulen under the contract with him.

The other assignments, we think, are not well taken.

For the errors indicated above, the judgment will be reversed and the cause remanded for a new trial.

*Reversed and remanded.*

Delivered October 25, 1892.


A motion for rehearing was overruled in this case.