## THE L. C. WALDO.

### (Circuit Court of Appeals, Sixth Circuit. February 12, 1900.)

#### No. 742.

1. COLLISION—DETERMINING FAULT—EVIDENCE CONSIDERED.

Evidence considered, and *held* to show that a collision between two meeting steamers was due to the failure of one to make the turn to port at a bend in the channel with sufficient promptness after an agreement by signal that the vessels should pass to starboard, and to exonerate the other from fault.

2. SAME—RULES OF NAVIGATION—CONSTRUCTION.

The rule applicable when two vessels are crossing so as to involve risk of collision, that the vessel which has the other on her own starboard side shall keep out of the way, has no application to vessels coming around bends in channels which may at times bring one vessel on the starboard of the other.

Appeal from the District Court of the United States for the Northern District of Ohio.

The steamers Waldo and Choctaw collided in the St. Marys river, about 1 mile below the lower entrance to the American canal lock at the Sault Ste. Marie. The Waldo was about 400 feet over all, was heavily laden with iron ore, and was bound down the St. Marys river. The Choctaw was 267 feet over all, was unladen, and was bound up the river. The collision occurred about 3 a. m. May 20, 1896, in the American channel, about 400 feet below Spry's Dock, on the American side. The stem of the Waldo struck the Choctaw about amidship on her starboard side, cutting in for about 7 feet, both above and below the water line. The Waldo also sustained considerable injury. The Choctaw was at once beached, to prevent sinking in deep water. The Choctaw was owned by the appellee, the Lake Superior Iron Company, which shortly after the collision filed its libel in the district court. The Waldo was owned by the appellant, the Roby Transportation Company, who answered and filed a cross libel. A vast amount of evidence was submitted upon the issues thus presented. Upon the pleadings and evidence the district court found the Waldo to be wholly at fault, and condemned her to pay the entire damage of the Choctaw, and dismissed the cross libel. From this decree the owner of the Waldo has appealed.

George Clinton and John C. Shaw, for appellant.

Harvey D. Goulder, for appellee.

Before TAFT, LURTON, and DAY, Circuit Judges.

After making foregoing statement of the case the opinion of the court was delivered by LURTON, Circuit Judge.

The usual and proper course for a vessel bound down the river from the entrance to the Canadian lock is to take the improved Canadian channel; the sailing course or range being indicated by range lights and targets on shore, and by buoys marking the sides of the channel. The Canadian ranges intersect the Bayfield or American channel ranges at a point about one mile below the lower entrance to the Canadian lock. From the canal entrance to the point of intersection the course is southeast. The Bayfield range there intersected is indicated by two light-bearing targets, situated on an island quite a distance below the range line. These targets and lights indicate the sailing course of vessels bound up or down the river to and from the American canal lock, above the Little

Rapids of the St. Marys river. The course of this range, from the point of intersection with the Canadian range, is easterly. The northerly line of the Canadian channel is marked by a series of red buoys, the last of which has an umbrella-shaped top, and is known as the "Red Turning Buoy," and marks the point where vessels bound down the river from the Canadian lock make their turn to get on the Bayfield range. The southerly side of the improved Canadian channel is marked by a series of black buoys, the last of which is some 3,000 feet above the red turning buoy. The turn off the Canadian ranges to the Bayfield ranges is something over 3 points, or about 33°. Somewhat to the north of the Bayfield range is a can buoy, called the "Bayfield Can Buoy," and is 4,135 feet below and easterly from the red turning buoy. The Bayfield range is 600 feet south of this red turning buoy, and the navigable channel south of that buoy, and between it and Spry's Dock on the American shore, is 1,300 feet wide. The location of these buoys and their distances from each other become important in the determination of the questions which arise upon the navigation of the two vessels here concerned. The charts and diagrams in evidence show the Bayfield range line to be about the center of the American channel, which, from the point of intersection with the Canadian ranges, is about 1,300 feet wide. The water north of that range line will be referred to as the Canadian side of the channel, and that south of the line as the American side of the channel, though the whole of the navigable channel, 1,300 feet in width, is on the American side of the international boundary.

The steamer Choctaw was bound up the St. Marys river for a cargo, and was empty. In the course of her voyage she reached the can or Bayfield buoy about 3 a. m. on the morning of May 20, 1896. In that high northern latitude, day was breaking, and, the morning being then clear and free from fog, objects were fairly observable. After turning on the Bayfield ranges from the Little Rapids cut, her engines were checked to half speed, which was about 7 miles per hour by the land, but only about 6 by water, as she had a stiff current against her. Her master, Capt. John Ward, was on her pilot house, on watch, and in charge of her navigation. When about abreast of the can or Bayfield buoy, he discovered the Waldo coming from the Canadian lock, and standing over diagonally for the American shore, which was her proper course before making the turn at the red turning buoy. While the Choctaw was close to the can buoy, and about on the Bayfield sailing line, he exchanged with the Choctaw signals of two blasts each. Whether the proposal to pass starboard to starboard was made by the Choctaw or the Waldo is a matter upon which there is a conflict of evidence, though the weight of evidence is that the Choctaw made the proposal, which was at once accepted by the Waldo. That both agreed to pass starboard to starboard when the Choctaw was close in the vicinity of the Bayfield can buoy is not disputed. The precise location of the Waldo when their first passing signals were exchanged is a question upon which there is a great conflict. The master of the Choctaw says the Waldo was

some distance above the red turning buoy, and about 500 feet below the last black buoy. This last black buoy is probably 3,000 feet northeast from the red turning buoy. The master of the Waldo, on the other hand, says that he did not discover the Choctaw until he had the red turning buoy close under his port quarter, and was passing it when he gave a signal of two blasts to the Choctaw, then close on the Bayfield can buoy. There is much evidence tending to support both contentions.

Making every allowance for the difficulty of locating a vessel by a local point, which could not itself be seen from the deck of the Choctaw, at the distance and with the light of a day just breaking, we are nevertheless convinced that the Waldo was above the red turning buoy when the first passing signals were exchanged. The defense of the Waldo is mainly planted upon the proposition of fact that the point of collision was on or north of the Bayfield range, and within 2 boat lengths, or 800 feet, of the red turning buoy. This claim is inconsistent with the claim that the first passing signals were exchanged when the Choctaw was abreast of the Bayfield can buoy, and the Waldo abreast of the red turning buoy. These buoys were 4,134 feet apart, and the Choctaw would have had to travel not less than four times as fast as the Waldo, to have reached the place of collision fixed by the evidence of the Waldo, if she was just passing the turning buoy when passing signals were first exchanged, as contended by the master and crew of the Waldo; assuming the Choctaw to have been about abreast of the can buoy at that exchange. The weight of the evidence is that the speed of the Choctaw from and after passing the can buoy, and up to the collision, did not exceed 6 miles per hour, while the conceded speed of the Waldo was from 4 to 4½ miles per hour, making an allowance for the effect of the current. That the Waldo was above the red turning buoy not less than 1,000 feet when the first set of passing signals was exchanged is the conclusion we reach upon all the facts and circumstances of the case. Having thus exchanged signals of two blasts each when about 1 mile apart, it is most remarkable that within less than 10 minutes thereafter these boats should come into collision in a channel which afforded a width of more than 1,000 feet of navigable water, with no extraneous influences, such as crowding by other craft, fogs, or darkness, to account for such an accident. It is not disputed but that it was the duty of the Waldo, having agreed to pass starboard to starboard, to have put her helm to starboard upon reaching the red turning buoy. Indeed, regardless of the presence of any vessel below, she was compelled to starboard her helm in order to turn into the Bayfield range. Did she do this in such a timely and efficient way as to make her swing properly on or north of the Bayfield range? If we turn to the pleading filed by the Waldo for an account of what she did when she ought to have made her turn, and how she accounts for the collision which so shortly followed, we find this statement:

"As soon as the Waldo reached the point when she could turn down from the diagonal course she had been pursuing, her helm was put hard a-starboard, and, being a good steering vessel, she turned as rapidly under such helm as it was possible for so large a loaded vessel to turn in such a locality."

Although the greater part of the broad channel was at all times left clear on the American side of the Waldo, the Choctaw disregarded her agreement so made by signals, and while the Waldo was so swinging to get headed down the regular channel the Choctaw continued to come up, heading on to the port side of the Waldo, until close to the latter.

"The Choctaw came on at great and apparently full speed, and began swinging under a starboard helm, projecting herself at great speed across the bow of the Waldo, in such manner as to render a collision unavoidable."

The defense, in substance, is that the Waldo began to swing under a starboard helm at the red turning buoy, and, while thus swinging, the Choctaw was so navigated as to head for the curve of her swing, and then suddenly sheered under a starboard helm across her bow. In other words, the Choctaw did not keep to the American side of the ranges, as she agreed to do, but pushed across the path of the circle which the Waldo was obliged to make in order to swing onto the Bayfield range. If this is sustained by the evidence, then it is clear that the Choctaw was at fault, and the decree should be reversed.

If we turn to the testimony of those on the Waldo, who ought to know whether the swing at the red turning buoy was begun and continued as it should have been, in view of the agreement to pass made with the Choctaw, and her nearness to the intersection of the Canadian range with the Bayfield range, we find that the master of the Waldo, Capt. John Dudleson, says that in approaching the turning buoy he held his boat up about a point; that is, he ported his helm about a point in order to avoid the effect of a cross current. Evidently there was some want of watchfulness in approaching this turning buoy, for Capt. Dudleson says his mate called his attention to the red buoy, saying that "we were heading close to it." In his wreck report, made on the day of the accident, he said, in his own handwriting:

"In coming out of Canadian channel, per lock, drifted down on outer buoy, east bank. Ported to clear it. Then put helm hard to starboard, and signaled to steamer Choctaw, bound up, two whistles. Received one in reply. Blew two again, and attempted to blow danger signal, when whistle lever broke; but Choctaw answered, and sheered off, but not far enough."

In his evidence he says the buoy, when his attention was called to it, was in a direct line about 100 feet ahead of him. To avoid running on the buoy and into the shallow water marked by it, he at once ported. His wheelman says he put his helm hard a-port. This would have the effect of sending his boat diagonally across the channel towards the American shore. If we assume the Waldo to have been where Capt. Dudleson says she was when this order to port was given, the Bayfield range was but about 600 feet from the stern of his boat, and in the direction of the American shore. This porting was followed quickly by a direction to steady, and that by an order to hard a-starboard. At this stage of this maneuvering to keep off the turning buoy, Capt. Dudleson says he noticed the Choctaw coming up the Bayfield ranges, and in the vicinity of the

can buoy, 4,135 feet below the turning buoy. He says in his evidence that he gave her, after starboarding, a passing signal of two blasts, and that between the two blasts "he heard one whistle." He continues, "I waited a short interval,—a proper interval,—and blew two more, and got a prompt response back from the Choctaw, with two blasts." This interval between the two sets of blasts he estimates at from six to eight seconds. He further says his boat "was swinging as fast as we should swing, and he came on. Presently his red light opened up. That was just before we came in collision." "The Choctaw was practically heading for our fore rigging, and suddenly sheered to port on a starboard helm, apparently under a sharp hard starboard wheel, and crossed our bow." "I immediately reversed full speed, and blew three or four sharp whistles." The collision followed almost instantly. Again, after saying that his boat was swinging under his hard a-starboard helm until he came in contact with the Choctaw, he states that he had to go only "about 800 feet from the time his helm was put hard a-starboard until we came in contact with the Choctaw." The Choctaw, he says, had made no change in her course in any shape or form, and was coming up the river on the course she was sailing when passing signals were first exchanged, until her sudden sheer across his bow, just before the collision. The Waldo was 400 feet long. According to her master's evidence, the turning buoy was just off his port quarter, less than 20 feet, when he starboarded. He says his stern had not passed the turning buoy more than the length of his vessel before the collision occurred. If this be true, his stern was only twice the length of his ship below that buoy. In this estimate of the place of collision he is supported by his crew, and some shore witnesses as well. This officer is very postive that the point of collision was north of the Bayfield range line, and on the Canadian side of the channel; and this is the statement in the answer of the libelee, and a fact which the counsel for appellant have most earnestly sought to support. "Had we not hit the Choctaw," says Capt. Dudleson in his evidence, "we would have come around to the north of the Bayfield ranges before intersecting them. They would not have closed up." If the collision occurred where appellant contends it did, it would be clear that the Choctaw had not complied with her agreement to direct her course towards the American shore, so that the Waldo, by directing her course towards the Canadian side of the channel, could safely swing onto the Bayfield ranges without danger from the Choctaw. On the other hand, if the collision occurred well to the south of the Bayfield ranges, it is equally clear that the Waldo was outside of the water in which she was bound to stay, under her agreement with the Choctaw. It must be remembered that between the turning buoy and the American dock line the channel was 1,300 feet wide. Seven hundred feet of this was south of the range line, and 600 feet north. Upon which side of the line did the collision occur? Unfortunately, no fact in the record is more controverted than this. Witnesses upon small craft lying at the pier and docks of Sault Ste. Marie, witnesses standing on either the Canadian or American canal piers, and wit-

nesses from the wharves, docks, and streets of the town of Sault Ste. Marie, have been examined in great numbers, until one reaches the conclusion that few of the inhabitants of that thrifty village indulge in sleep during the ordinary hours devoted to that purpose. These shore witnesses (for under that head we class all those not of the crews of the colliding vessels) throw little light of a satisfactory character. So much depends upon the standpoint from which they saw the colliding vessels, and the objects by which they judged of distances and direction upon the water, that we can get little that is satisfactory from this class of witnesses.

We turn to the direct evidence of the master of the Choctaw, for the purpose of comparing his story of what occurred with that of the master of the Waldo. These two men were navigating their respective vessels. They have each the same interest, and are in no way directly impeached. We have already stated this evidence up to the time of the exchange of the first set of passing signals, and have announced our conclusion to be that the Choctaw first signaled the Waldo, and that the Waldo at once responded by two blasts. We have also stated our conclusion to be that when these signals were exchanged the Choctaw was close to the can buoy, and the Waldo between the red turning buoy and the last black buoy, and probably not less than 1,000 feet above the red buoy. The improbability that the collision could have occurred where fixed by either party, if the Waldo was passing the red buoy when the first passing signals were given, led us to the conclusion that the evidence tending to show that the Waldo was above the turning buoy when that agreement was made was the most reliable. The preference to pass to the starboard side of the Waldo was due to the determination of the master of the Choctaw to take the American canal. After getting in response a signal of two blasts, Capt. Ward says, he "starboarded some"; "hauled over towards the American shore a little, for that lower coal dock,"—Anthony's. His vessel was then under a check, and was proceeding at half speed. He ran on that course for a time, when, seeing that the Waldo had not changed her heading, and was still standing across towards the American shore, and was about crossing the Bayfield range, he gave her two blasts again, and got two in response, the last of which was not very distinct. He then checked down to slow, reducing speed to about 3 miles per hour, and starboarded still more, so as to head his vessel for the lower end of Spry's Dock, on the American shore. Seeing no change in the course of the Waldo, he blew a danger signal, put his helm hard a-starboard, and reversed at full speed. He says that just before the Waldo struck him "he thought she was swinging a little on her starboard helm." He fixes the place of collision at about 200 feet out from the dock line of American shore, and 400 feet below lower end of Spry's dock. If this is true, or substantially true, the collision occurred several hundred feet south of the range line, and way over on the American side of the channel. In this location he is supported by the crew, and by a majority of the shore witnesses best placed for observation.

The district judge heard and saw the many witnesses who testi-

fied. Upon a full consideration of the whole of the evidence, he said, in a clear and careful opinion:

"I am aware that there is a sharp conflict of testimony upon this point, but I find the weight of testimony is that the collision occurred near the American shore, out from Spry's Dock."

This accords with the impression we receive from a careful study of the whole record. The fault of the Waldo, which brought about this collision, seems to have been that she did not begin her swing in due time, and made altogether too great a circle, whereby she was carried so far over onto the American side of the channel as to unduly crowd the Choctaw. In view of the agreement, which bound her to direct her course to port, she was negligent in making her turn, and left the Choctaw insufficient space to maneuver or protect herself. The argument that the speed of the Choctaw was too great, and that she did not reverse when she should, does not shake the conviction we entertain, that the evidence in this record does not convict the Choctaw of any such positive error of navigation in either respect as to justify her condemnation. Finding against the Waldo as to her location when the first agreement as to passing was made, it is most likely that the second set of signals was exchanged when she had passed the turning buoy, and was close upon the Bayfield range, and still headed for the American shore. There was a distance between the two vessels of not less than 2,000 feet at that time, and ample time, if she had put her helm hard a-starboard at once, to have passed in safety. There was some delay in this, not explainable to our satisfaction. Agreeing a second time to pass starboard to starboard, the Waldo was justified in assuming that she had already starboarded, and would so swing as to straighten out before crossing the Waldo's bow. It was prudent, in view of this nearness, to slow down, and this the Choctaw did. In addition, the Choctaw starboarded still further, so that when the collision occurred she was probably within less than 300 feet of the American dock line. When she saw the Waldo persisting in her diagonal course, or not turning with speed enough to clear herself, the Choctaw reversed and sounded an alarm. The result showed that this came too late. But, in view of the clear guilt of the Waldo, we are not willing to condemn the judgment of the master of the Choctaw in not sooner reversing. The suggestion that the Waldo was on a course which included a turn, which the navigator of the Choctaw was bound to know and allow for, may be admitted. But this we think she did. The Choctaw directed her course to the American shore. The master of the Waldo says he would have made his turn and straightened out north of the Bayfield ranges, without crossing the line at all, if he had not struck the Choctaw north of that line. This is a concession that he did not need to go over on the southerly side of the channel at all, if he had begun his maneuver soon enough, and placed and held his helm in the right position. There is no pretense that he needed more water than was allowed him; and if the fact be, as we think it is, that the collision occurred within 300 feet of the American dock line, it is clear that the Choctaw had done her duty in going to port, and had left

an abundance of room for the Waldo to make her turn in. The suggestion that the Choctaw had the Waldo on her starboard bow, and was bound to keep out of her way, has no application "to vessels coming around bends in channels, which may at times bring one vessel on the starboard of the other." The Victory, 168 U. S. 410, 418, 18 Sup. Ct. 149, 42 L. Ed. 519. Aside from this, there was here a clear agreement which bound each vessel to go to port and pass starboard to starboard.

Our conclusion is that the Choctaw was on her proper course, and was not bound to anticipate the negligence of the Waldo, and that, when that negligence became so apparent as to charge her with notice, she took such reasonable precautions as to acquit her of any fault for which she should be condemned. The decree must be affirmed.