# CHARLESTON.

KNOBLEY MOUNTAIN ORCHARD COMPANY *v.* PEOPLES BANK OF KEYSER, WEST VIRGINIA

(No. 5145)

Submitted March 3, 1925.    Decided September 8, 1925.

1. CORPORATIONS—*Knowledge of Sole Official Acting For and In Interest of Corporation Is Imputed to It; If Corporation Claims Benefit of Act of Official, It Is Subject to Consequences of His Knowledge.*

   The knowledge of a sole official acting for, and in the interest of, a corporation, is imputed to it. If it claims the benefit of his act, it becomes subject to the consequences of his knowledge. *Bank* v. *Aler*, 92 W. Va. 313. Approved and distinguished. (p. 440.)

2. SAME—*Corporation Cannot Ordinarily Ratify Act of Its Officer and Disaffirm Fraud by Means of Which Act Was Accomplished.*

   A corporation cannot ordinarily ratify the act of its officer, and disaffirm the fraud by means of which the act was accomplished. (p. 445.)

3. BANKS AND BANKING—*Bank Held Liable to Corporation For Its Funds Wrongfully Transferred to Bank by Its Cashier, Who Was Treasurer of Corporation.*

   The cashier of the defendant was also the treasurer of the plaintiff, with authority to draw checks in the name of the plaintiff. The accounts of the cashier and his brother had become heavily overdrawn. By means of checks drawn against the plaintiff, the cashier transferred to the bank funds from the plaintiff's account in the bank in settlement of these overdrafts. *Held*, the bank may not close its eyes to the fact that these payments were made with funds which did not belong to its debtors and which it had no right to receive in such settlement, and it is liable to the plaintiff in a suit therefor. (p. 446.)

Error to Circuit Court, Mineral County.

Action by the Knobley Mountain Orchard Company against the People's Bank of Keyser. Judgment for defendant, and plaintiff brings error.

*Reversed and remanded.*

*F. M. Reynolds* and *Emory Tyler,* for plaintiff in error.
*Charles N. Finnell,* for defendant in error.

HATCHER, JUDGE:

For several years, T. D. Leps was treasurer of the plaintiff and at the same time cashier of the defendant. During the year 1919, to offset shortages amounting to $2,300.00 in his own and his brother's accounts with the bank, he charged the account to the plaintiff on the ledger of the Bank with that amount in items of $1,000.00, $1,000.00, and $300.00 respectively. He posted the passbook of the plaintiff both in that year and in 1920, but did not enter thereon these three charges against it. Sometime in 1920, Leps, without depositing any money, entered credits on the account of the plaintiff on the ledger, which offset the charges aforesaid.

In January of 1921, the plaintiff's passbook, as made up by Leps, showed to its credit on deposit in the Bank, the sum of $2,554.56. About that time, the defendant made an investigation of Leps, in which it discovered among his private papers in a private box under lock and key, three checks in his handwriting drawn in the name of the plaintiff, one for $300.00 payable to cash, one for $1,000.00 payable to the Bank, and one for $1,000.00 payable to J. E. Leps, who was the brother of T. D. Leps. These checks were stamped "Paid," but bore no endorsement, except that on the back of the one to J. E. Leps was "Cr. A-c J. E. Leps" in the handwriting of T. D. Leps. Thereupon, the Bank re-entered upon its ledger charges against the plaintiff for the several sums expressed by these checks, and refused payment to the plaintiff of the $2,300.00 which they aggregate.

In 1923, the plaintiff gave notice of motion for judgment against the defendant for $3,133.51. This amount was predicated on the $2,554.56 shown to be due plaintiff by its passbook in 1922, and on the result of some intermediate transactions between then and the date of the suit. The plaintiff admitted that the Bank had given it credit for $633.51 in another transaction, so the real amount in controversy in this action is $2,500.00. The case was tried by the circuit court of

Mineral County in lieu of a jury, and a judgment found for the defendant. The case is here on error.

Two items are included in the $2,500.00 claimed by the plaintiff. One of $2,300.00 is involved in the Leps defalcation. The other, of $200.00 is presumably a balance claimed on the deposits of the plaintiff made prior to 1922.

The position of the plaintiff in regard to the $2,300.00 is that this amount was *stolen from the defendant by its cashier,* that ''under the facts and circumstances of this case, knowledge of the cashier was the knowledge of the Bank—and the Bank is responsible to this plaintiff for the misappropriation of the funds of the bank, represented by the three checks.'' The plaintiff admits that there is a conflict in the decisions upon the question of notice where a corporation official occupies a dual capacity, such as Leps did. It cites *Lowndes* v. *Bank,* 82 Conn 8, 72 Atl. 150, as a leading case favoring its contention.

The claim of the defendant is that the $2,300.00 was *stolen from the plaintiff by its treasurer.* Its brief states:

> ''The three checks making up this $2,300 were issued by Leps, who as treasurer, admittedly had the authority to issue them back in the year 1919; the Bank paid them when presented for payment, just as it paid other checks issued by Leps both before and after that time. * * * After they were paid, the Bank evidently delivered them to Leps as plaintiff's treasurer. * * * These checks were regularly charged against plaintiff on the Bank's books, and no one in any way connected with the Bank other than Leps is shown to have had any knowledge that they had been issued for any improper purpose.''

The defendant relies on the rule that a corporation is not ordinarily chargeable with the information of an officer, which it was to his interest to conceal from the corporation, and refers among other authorities to *Bank* v. *Aler,* 92 W. Va. 313, *School District* v. *DeWeese;* 100 Fed. 507, *Hilliard* v. *Lyons,* 180 Fed. 685, and *Brookhouse* v. *Publishing Co.,* 73 N. H. 368, 2 L. R. A. (N. S.) 994.

A concise statement of the rule favoring the contention of the Bank is expressed in paragraph 675, Pomeroy's Eq. Juris. In a note, however, Mr. Pomeroy questions the application of this rule to the case of a corporation acting through a single official. The doubt he raises is confirmed by the decisions collected in an annotation to *Brookhouse* v. *Publishing Co., supra.*

"There is, however, good authority, if not the weight of authority, in favor of a qualification of the foregoing exception so as to exclude therefrom, and therefore to bring within the general rule which charges the principal with knowledge possessed by the agent, cases where the officer, though he acts for himself or for a third person, is the sole representative of the corporation in the transaction in question. None of the cases above cited expressly denies, and few of them are necessarily inconsistent with, the exception of such qualification to the exception; and some of them —e. g., *English-American Loan & T. Co.* v. *Hiers, National Bank* v. *Feeney,* and *Commercial Bank* v. *Burgwyn*—expressly admit the qualification. By reason of such qualification the application of the exception was denied in *Brobston* v. *Penniman,* 97 Ga. 527, 25 S. E. 350, holding that a bank was chargeable with knowledge of its president and cashier, that the proceeds of the note of a firm, of which they were members, were to be used for their private purposes, and not for the purposes of the firm, they having represented the bank in making the loan and taking the note. So, in *Morris* v. *Georgia Loan Sav. & Bkg. Co.* 109 Ga. 12 46 L. R. A. 506, 34 S. E. 378, where the cashier of a bank, as an idividual, had an interest in a promissory note which he knew was given without consideration, and, as cashier, discounted the note without reference to, or consultation with, any other officer of the bank, it was held that the bank was not a bona fide purchaser of the note, without notice. The case of *English-American Loan & T. Co.* v. *Hiers, supra,* was distinguished from the last two cases upon the ground that the person whose knowledge was sought to be charged to the bank was merely a director, and had no active partici-

pation in the management of the bank's affairs. In *Black Hills Nat. Bank* v. *Kellogg,* 4 S. D. 312, 56 N. W. 1071, it was held that the knowledge of the cashier of a bank as to defenses against a promissory note made to him in his individual capacity, and by him transferred to the bank, was chargeable to the bank, it appearing that he transacted the business in behalf of the bank.   The case of *National Bank* v. *Feeney, supra,* was subsequently distinguished upon the ground that the cashier in that case was not a member of the discount committee by which the loan was made.   In *Steam Stonecutter Co.* v. *Myers,* 64 Mo. App. 527, the court said, in effect, that the rule that where an officer of a corporation deals with it in his individual capacity, the corporation is not chargeable with his uncommunicated knowledge of facts affecting the validity of the transaction, does not apply where the officer is acting for the corporotion as well as himself, and distinguished the case of *Merchant's Nat. Bank* v. *Lovitt, supra,* upon the ground that in that case one officer of the corporation acting as an individual, dealt with another officer, representing the corporation.   The foregoing qualification of the exception is also supported by *Witter* v. *McCarthy* (Cal.) 43 Pac. 969; *Barksdale* v. *Finney,* 14 Gratt. 338; *Smith* v. *Wilson & B. Sav. Bank,* 1 Tex. Civ. App. 115, 20 S. W. 1119; and *Anderson v. Kinley,* 90 Iowa, 554, 58 N. W. 909.''

The decisions referred to in the annotation seem to us to express the better view.   Cases may arise in which the knowledge of its sole executive should not be impressed upon the corporation, but the plain facts in this case forbid the Bank such immunity.   The accounts of Leps and his brother had become heavily overdrawn.   These overdrafts constituted debts due the Bank.   Admitting as true the contention of the Bank that the Bank *paid* the checks in question, and then plaintiff's treasurer *stole* from the plaintiff the money obtained therewith—these facts do not exculpate the Bank. In settlement of the overdrafts, the Bank's cashier accepted this so-called *stolen* money which he knew was not the money of Leps or his brother, but which he knew was money em-

bezzled from the Orchard Company. It was to the interest of the Bank to have these overdrafts adjusted; but the Bank may not close its eyes to the fact that these payments were made with money which the debtors had no right to use and its cashier no right to receive. In attempting to avail itself of the acts of its cashier to its advantage, the Bank becomes subject to those to its disadvantage. A parallel case is that of *Emerado Farmers' Elevator Co.* v. *Bank of Emerado,* 20 N. D. 270; 127 N. W. 522:

> "In case the cashier of a bank, who has misappropriated its funds or otherwise become indebted to it, in order to conceal his defalcation or pay his indebtedness transfers funds of an elevator company of which he is treasurer, to the bank, and in order to account for such transfer draws checks upon the elevator company payable to the bank and charges the amount of the same against the elevator company upon the books of the bank, the bank having accepted such payment through its cashier, cannot retain the benefits of his act without accepting the consequences of this knowledge. After receiving funds under such a state of fact the bank can retain them only through ratification of the fraudulent act of its agent, the cashier; and in doing this it becomes particeps criminis with the cashier and liable at the suit of the elevator company to the amount of the fund so fraudulently transferred."

In referring to the relation between a corporation and an officer acting for it, the Massachusetts court in *Atlantic Cotton Mills* v. *Indian Orchard Mills,* 147 Mass. 268, 9. Am. St. Rep. 698, 17 N. E. 496, pointedly holds:

> "It must be deemed to have known what he knew, and it cannot retain the benefit of his act without accepting the consequences of his knowledge. It cannot obtain greater rights from his act than if it did the thing itself knowing what he knew."

*Accord: Fishkill Savings Institute* v. *Bostwick et al,* 19 Hun. 354; *Brobston* v. *Penniman,* 97 Ga. 527, 25 S. E. 350;

*Traders National Bank etc.* v. *Smith,* (Tex.) 22 S. W. 1056; *In re: Millward-Cliff Cracker Co.,* (Pa.) 28 Atl. 1072; *First National Bank* v. *Dunbar,* 118 Ill. 625, 9 N. E. 186; and *Lowndes* v. *Bank, supra.*

Our holding herein in no wise conflicts with *Bank* v. *Aler, supra.* In that case, Aler had sold some notes to the Bank. When sued as an endorser thereon, he sought credits against the Bank, amounting to certain commissions which the Bank's cashier had secretly exacted from him for causing the Bank to purchase the notes. The court rightly held that the act of the cashier in exacting commissions was committed in his own interest, was one in which he did not represent the Bank nor profess to do so and that therefore notice of his act was not imputed to the Bank.

How different from the *Aler* case are the facts in the present case. Here the fraudulent acts of Leps as cashier, though committed in his own interest, were also in the interest of his Bank, were done in matters in which he did profess to represent the Bank, and in which the Bank now says *he represented it.*

Neither do we find opposition in the other cases quoted in the Bank's brief. The facts in the case of *Brookhouse* v. *Publishing Company, supra,* as given by the court, are as follows:

> "At the time of the transaction giving rise to this controversy, Joseph C. Moore was the defendant's treasurer and manager, and had the practical control of its affairs. He was also guardian for the plaintiff. * * * Moore used defendant's deposit account in the Manchester National Bank as a conduit for his private enterprises, keeping a record of them on defendant's books. He withdrew from the guardian's bank account money for which he received certificates of deposit, and bank drafts payable to himself as guardian or order. He indorsed these and directed the assistant treasurer to deposit them in the defendant's bank account. This was done. For his own purposes he subsequently checked out the money."

Upon these facts, the New Hampshire court properly held:

> "The mere fact that a ward's money went into
> the bank account of a corporation through the
> fraudulent conduct of its treasurer does not ren-
> der the corporation liable therefor if the treasurer
> is shown to have removed it again from such ac-
> count into the possession of other persons."

The opinion in the *Brookhouse* case recognizes the very
principle which prompts our holding herein. It terms it "the
familiar principle that a person cannot ratify acts and dis-
affirm the fraud that is a constituent part of them".

*School District* v. *DeWeese,* 100 Fed. 705, and *Hilliard* v.
*Lyons,* 180 Fed. 685, signally fail to support the defendant's
cause. In each of these cases, the cashier of the Bank was
the agent of a third party, and as such agent, withdrew funds
from the Bank, which were *afterwards* misappropriated. The
Bank had no part in, and derived no advantage from the
cashier's speculation. In each case, the court held that the
misappropriation was the act of the agent of the third party,
and not of the cashier of the Bank. The dissimilarity of the
facts in those cases to the case under consideration is so ap-
parent as to need no discussion.

No citation is needed in support of the proposition that
one knowingly accepting stolen money acquires no title there-
to against the owner. Why then, should the Bank be per-
mitted to retain this money which it asserts was *stolen* from
the plaintiff? Why should not the plaintiff trace and recover
its *stolen* money from the Bank? No equity to the contrary
appears.

The Bank would invoke in its behalf the rule that when
one of two innocent parties must suffer for the wrongful act
of a third, the one must bear the loss, who by his acts, enabled
the third person to cause the loss. But as Judge POFFENBARGER
well said in the opinion of *Bank* v. *Aler, supra:* This rule

> "applies only in those instances in which one
> clothed with apparent authority to act for another,
> but without actual authority to do so, has pro-

fessed to act for him, and the injured party has
dealt with him upon the faith of his apparent au-
thority.''

The facts in this case do not call for a consideration of
the rule. The authority to do the things which he did do
was not lacking in Leps either as cashier of the Bank, or as
treasurer of the Orchard Company. The Bank must there-
fore restore the $2,300.00 to the plaintiff, or so much thereof
as remains unrestored.

Leps, testifying as a witness for the defendant, swore that
the balance shown due the plaintiff on its passbook on Janu-
ary 21st, 1921, was correct. If that be accepted as true, then
the defendant would be due the plaintiff the item of $200.00
as well as that of $2,300.00. The assistant cashier of de-
fendant testified as a witness for the Bank that the balance
shown by the passbook on that date was not correct. The
Bank having offered both of these men as witnesses, vouched
for the credibility of each. Their testimony on this item be-
ing in direct conflict, where should the court place credence?
We are not aided in the solution of this matter by the evi-
dence of the other witnesses. An expert accountant testifying
for the plaintiff, made vague reference to ''invisible credits''
and ''invisible vouchers'' affecting plaintiff's account. We
prefer not to base our judgment on invisible credits, and so
remand the case for proper evidence in regard to the $200.00,
instead of entering judgment here.

*Reversed and remanded.*