FIRST NATIONAL BANK OF GRAFTON *vs.* CHARLES
BABBIDGE & another.

Suffolk. December 4, 1893. — March 1, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Promissory Note — Principal and Agent — Action.*

If the president of a national bank for his own purposes obtains a promissory note
from a third person without consideration, and the cashier of the bank, although
without authority, discounts the note at the president's request, and places the
proceeds to the credit of the latter, who uses them for his own benefit, and does
not disclose to the directors of the bank the character of the note or the nature
of the transaction, the bank may maintain an action thereon against the maker
of the note.

CONTRACT, against Charles Babbidge and Augustine L. Babbidge, upon a promissory note for $5,000, dated March 8, 1892, payable four months after date to the order of the last named defendant and indorsed by him, and signed by the first named defendant. The answer, among other defences, set up want of consideration. Trial in the Superior Court, before *Aldrich,* J., who reported the case for the determination of this court, in substance as follows.

It was admitted that the plaintiff bank was a national bank duly established by law, having a place of business at Grafton, in this Commonwealth; that on or about April 20, 1892, a national bank examiner took charge of the bank, and it immediately thereafter went into voluntary liquidation for the purpose of winding up its affairs; that on that date the note in suit was among the assets of the bank; and that neither of the defendants received any consideration for the note.

Chester T. Linley, the only witness for the plaintiff, testified that he was president of the plaintiff bank from January 11, 1892, to April 20, 1892; that the signatures of the defendants upon the note were genuine; that on March 8, 1892, he went to Boston and told A. L. Babbidge that he " was short," that he wanted to carry out some financial arrangements, and asked him if he did not have some securities which he could lend the witness for a time, and Babbidge afterwards gave him the

note ; that at that time the witness was financially embarrassed, which fact was not disputed ; that on March 10, 1892, he gave the note to the cashier of the plaintiff bank, and it was discounted in the ordinary course of business, and the proceeds credited to Linley's private account, and immediately afterwards checked out by him ; that he did not inform the other officers of the bank that he had got the note without consideration, or make any disclosure in any way affecting its character ; and that no part of the note had been paid.

On cross-examination, the witness testified that from January 11, 1892, to April 20, 1892, he performed the ordinary duties of president of the plaintiff bank, with the knowledge and assent of the officers of the bank ; that the ordinary duties of a president of a national bank included the discounting of notes, but that it was not his duty to discount notes without the consent of the directors ; that when it seemed to be for the interest of the bank to discount a note and then speak to the directors about it afterwards he would do it, and if it did not seem to be for the interest of the bank he would speak to them about it before discounting the note ; that the cashier of the bank did not have any authority to discount notes without instructions from a superior officer ; that, when he received the note in suit from A. L. Babbidge, he gave him the following receipt therefor : " Received from A. L. Babbidge note dated March 8th, 1892, signed by Chas. Babbidge, indorsed by A. L. Babbidge, which said A. L. Babbidge has loaned to me without consideration " ; that he took the note to the plaintiff bank on March 10, 1892, and gave it to the cashier, and told him to enter it in the usual way and discount it, and place the proceeds to his (Linley's) private account, which was done immediately ; that he said nothing to any other officer of the bank in regard to the note prior to the time when it was discounted, and no officer of the bank besides the cashier, in his duty of entering up the note, had anything to do with the discounting of the note, or any knowledge of it before it was discounted ; that the defendants were not known to any other officer of the bank than the witness ; and that he did not indorse the note, because he " wished to keep from the directors the fact that he was using so much of the bank's money."

The witness, being recalled by the defendants, testified that after the note had been discounted he spoke to some of the directors about it, and told them that Babbidge was good, that he thought A. L. Babbidge was amply good and he knew Charles Babbidge was good, that the loan would be a very good loan for the bank, and that he could get a very good rate on it, and he thought it was for the interest of the bank to take it; that he thought it was the afternoon of the same day when the note was discounted and the proceeds thereof were credited to his account; that he spoke to one director at the bank, and within several days to some or all of the others; and that the note was put through the same as all the other notes of the bank, and as all notes in all national banks are put through.

The defendants asked the judge to rule that, on the evidence, the jury should return a verdict for the defendants. The judge declined so to do, but ruled that, upon the evidence, the plaintiff was entitled to a verdict, which was returned accordingly. If the rulings were correct, judgment was to be entered on the verdict; otherwise, a new trial was to be ordered.

*J. J. Feely,* for the plaintiff.

No counsel appeared for the defendants.

ALLEN, J.   This case comes up on a report, and although the defendants do not appear to argue the question presented, we have considered it. If Linley alone had acted in discounting the note and in placing the proceeds to his own credit, the bank would be bound by his knowledge of the circumstances under which he had obtained it from the defendants. *Atlantic Cotton Mills* v. *Indian Orchard Mills,* 147 Mass. 268. But he did not act alone. The cashier of the bank was the officer who actually did these things. Linley in this transaction was not the representative of the bank. He was obtaining from the bank the discount of a note for his own benefit, and thereupon on the face of the transaction he was on one side of the bargain and the bank on the other. The cashier was the sole representative of the bank. To be sure, the act was beyond his authority while acting alone, yet he may not have thought so, under the circumstances. At any rate, there is no suggestion that he was in collusion with Linley, or that he had any reason to doubt that what he did was for the interest of the bank. If the bank

might have repudiated his agency, it did not do so; and even though he may have gone beyond his authority he was a financial officer and agent of the bank, and was acting for it and for nobody else, and his agency has not been disavowed, and under these circumstances Linley's knowledge is not to be imputed to the bank, and the bank is entitled to recover on the note. *Corcoran* v. *Snow Cattle Co.* 151 Mass. 74. *Allen* v. *South Boston Railroad*, 150 Mass. 200, 206. *Innerarity* v. *Merchants' National Bank*, 139 Mass. 332.          *Judgment on the verdict.*