# RUDD LUMBER COMPANY v. MARTIN ANDERSON AND OTHERS.[1]

January 2, 1925.

No. 24,252.

**Finding as to return of windows unsupported by evidence.**

1. The finding that windows furnished for a building were returned to and accepted by the plaintiff who furnished them is not supported by the evidence.

**Finding unsupported that offer at certain prices was accepted.**

2. The finding that plaintiff offered cement and sand at certain prices and that the offer was accepted is not supported by the evidence. The probative effect of plaintiff's books of account was not overcome by the evidence introduced by defendants.

**Counterclaim based on breach of contract unsupported.**

3. The evidence fell short of establishing a contract obligating plaintiff to furnish all the cement required to construct the building. The counterclaim for damages resulting from a breach of the alleged contract was not established by the evidence.

**Principal not charged with notice of false lien statement made by agent defrauding him.**

4. An agent engaged in a scheme to defraud his principal, who falsifies a lien statement to conceal his wrongdoing, is not acting within the scope of his employment. Under such circumstances the principal cannot be charged with notice of the fact that a lien for more than was justly due was claimed, and will not be deprived of his lien by virtue of section 7085, G. S. 1913.

**When materialman's lien is prior to that of recorded mortgage.**

5. Under section 7023, G. S. 1913, if materials for an improvement are furnished on the premises before the owner mortgages the property, in the absence of actual notice of the mortgage the materialman's lien is superior to the lien of the mortgage.

[1]Reported in 201 N. W. 548.

Action in the district court for Isanti county to foreclose a mechanic's lien. The case was tried before Giddings, J., who ordered a money judgment for $161.88 in favor of plaintiff and held that the mortgage of defendant bank was a first lien on the premises. From an order denying its motion for a new trial, plaintiff appealed. Reversed.

*E. L. McMillan*, for appellant.

*Godfrey G. Goodwin* and *Will A. Blanchard*, for respondents.

LEES, C.

Plaintiff filed a claim for a mechanic's lien for $2,571.05 on property owned by the defendant Martin Anderson and brought this action to foreclose the lien.

The court found that Anderson owed but $161.88, and that in its lien statement plaintiff had knowingly demanded more than was justly due. Plaintiff has appealed from an order denying its motion for a new trial.

In the summer of 1920, Anderson, who conducted an automobile repair shop in the village of Braham in Isanti county, began the construction of a large garage. He purchased building materials from the plaintiff, who had a retail lumber yard in the village, managed by J. L. Findley. The transactions between Anderson and Findley have given rise to this controversy. The lien statement was made and verified by Findley in plaintiff's behalf, the amount claimed being the balance due from Anderson according to plaintiff's books, which were kept by Findley. After the claim for lien was filed, Findley disappeared and it was discovered that he had embezzled funds belonging to the plaintiff. Plaintiff was unable to procure his testimony, and there was no contradiction of Anderson's testimony relative to the transactions in question.

The first materials were furnished by plaintiff on July 30 and the last on November 29. The total charges entered in plaintiff's ledger aggregate $3,981.30. There is but one credit entry of $1,410.25, under date of September 30, and the lien claimed was for the amount required to balance the account.

The principal controversy is over 5 alleged payments, aggregating $1,625, which are not credited upon the account. The trial court found that they had been made, and plaintiff contends that the finding is not supported by the evidence. We refrain from expressing any opinion with respect to this phase of the case. There must be a new trial for other reasons, and the evidence may not be the same.

1. The court found that 11 windows, delivered and charged to Anderson, were subsequently returned to plaintiff and accepted without being credited. The only evidence as to this was that the charge was for windows 24x28 inches and that there are no windows of that size in the garage. Such evidence will not support a finding that the windows were returned and accepted.

2. There is a finding that Findley agreed to furnish Anderson with all the cement and sand he needed at a price of 67¢ a sack for cement and $1.35 per cubic yard for sand. The amounts charged in plaintiff's books were $4.40 a barrell, or $1.10 a sack for cement, and 8¢ and 10¢ per cwt. for sand, or an average price of about $2.25 a cubic yard.

Anderson testified that about the first of May Findley offered to furnish cement and sand at the prices first mentioned, if he, Anderson, would build; that the offer was acceptable, but nevertheless he and Findley went to the cashier of the local bank to ascertain whether the money needed to erect the building could be obtained; that the cashier advised him not to build, and so he abandoned the project; that Findley continued to urge him to build, and finally he yielded to his persuasion and excavated the basement, but did no other work until delivery of cement and sand began near the end of July.

As we read Anderson's testimony, there was no unconditional acceptance of Findley's offer when it was made. Evidently Anderson wished to have some assurance that he could borrow enough money to pay for the building before he came to a decision. He consulted his banker and, acting on his advice, decided not to build, and so Findley's efforts were fruitless for the time being. True, Anderson subsequently changed his mind, but there was no proof

which would support a finding that Findley renewed his offer or agreed to furnish cement and sand at the prices first mentioned. The wholesale price of cement in July was $3.40 a barrel or 85¢ a sack, not including freight or drayage, and the price of sand was 10¢ per cwt., and cement was scarce and the price was advancing. Under these circumstances there is no substantial basis for an inference that the parties understood that the prices quoted in May would hold good in July, or that the offer would remain open for acceptance until such a time as Anderson should decide to build. An offer to sell, no time for acceptance being specified, must be accepted within a reasonable time. I and 3 Dunnell, Minn. Dig. §§ 1740, 8502. Here the alleged offer was made early in May, and, under the circumstances, a reasonable time to accept it had expired when the first cement and sand were furnished on July 30. Plaintiff's books were prima facie evidence of the correctness of the amounts charged, section 8437, G. S. 1913, and of the amount of Anderson's indebtedness, and his testimony did not overcome their probative effect.

Our conclusion is that the finding that there was a contract of sale at the prices to which Anderson testified is not sustained by the evidence.

3. The court allowed a counterclaim for money expended by Anderson for concrete molds he could not use. The basis of the counterclaim was an alleged breach by plaintiff of its contract to furnish all the cement needed to construct the building, in consequence whereof changes in the plan of construction were necessitated which made the molds useless and of no value. The only proof of such a contract was Anderson's testimony as to his conversation with Findley already mentioned. It fell short of establishing a binding contract. If no contract was made in May, all we have is the fact that Anderson ordered and plaintiff furnished the cement charged in its books. There was no proof of an undertaking to furnish a given quantity of cement. The evidence will not support a recovery upon the counterclaim.

4. The finding that in its lien statement plaintiff knowingly demanded more than was justly due cannot be sustained. As already

noted, Findley was the author of the statement, so the question is whether a principal can be charged with a violation of section 7085, G. S. 1913, if his unfaithful agent conceals his wrongdoing by falsifying a lien statement. The statute was considered in Lyons v. Westerdahl, 128 Minn. 288, 150 N. W. 1083, and in Hydraulic P. B. Co. v. Mortgage L. & Inv. Co. 144 Minn. 24, 173 N. W. 849, 176 N. W. 202. In Ruedlinger v. Fisher, 160 Minn. 324, 200 N. W. 299, we declined to consider the contention that the statute had been violated, for the reason that the defendant had not raised the issue in his answer or at the trial.

In the present case a violation of the statute is not pleaded and there is no proof that any of plaintiff's officers intentionally claimed more than they honestly believed to be due from Anderson. The only support for the finding is the rule that the knowledge an agent gains while transacting his principal's business will be imputed to the principal.

The rationale of the rule of constructive notice to the principal is differently stated by the courts. Some have based the rule upon the presumption of an actual communication between the agent and his principal and others upon the legal conception that the agent and his principal are regarded as one. Pomeroy, Eq. Jur. § 666.

An exception to the rule, as firmly established as the rule itself, is that the agent's knowledge will not be imputed to the principal when he is engaged in a scheme to defraud the principal as well as the other party to the transaction. Manifestly it would be unjust to impute notice under such circumstances, for, when an agent commits an independent fraud, it cannot be supposed that he will inform his principal of it. Moreover, when he is engaged in perpetrating such a fraud, he is not acting within the scope of his employment. These are valid reasons for refusing to charge the principal with notice of the facts constituting the fraud. Fort Dearborn Nat. Bank v. Seymour, 71 Minn. 81, 73 N. W. 724; Benton v. Minneapolis T. & Mnfg. Co. 73 Minn. 498, 76 N. W. 265; Pomeroy, Eq. Jur. § 675; 8 Minn. L. R. 452. Hence we hold that there was error in the denial of plaintiff's claim to a lien for some amount.

5. The court found that Anderson mortgaged the property to

the defendant bank on October 4, 1920, and held that the mortgage was a first lien.

Under section 7023, G. S. 1913, the lien of the mortgage would be subordinate to plaintiff's lien if materials for the improvement were furnished upon the premises before the mortgage was of record, unless plaintiff then had actual notice of the mortgage. City of Ortonville v. Geer, 93 Minn. 501, 101 N. W. 963, 106 Am. St. 445; Erickson v. Ireland, 134 Minn. 156, 158 N. W. 918.

There should be a new trial of all the issues, and it is so ordered.