## UNION CENTRAL LIFE INSURANCE COMPANY v. STAR INSURANCE COMPANY OF AMERICA.[1]

. November 29, 1929.

No. 27,516.

*Nathan H. Chase,* for appellant.
*Anton Thompson,* for respondent.

WILSON, C. J.

Defendant appealed from an order denying its motion for a new trial.

During all the times herein mentioned Mr. E. M. Townsend was plaintiff's financial agent at Fergus Falls. He looked after plaintiff's loans and farm property in 15 counties. He was also the local agent of defendant writing fire and tornado insurance policies on city properties and taking applications for both classes of insurance on farm properties.

[1]Reported in 227 N. W. 850.

On January 9, 1925, defendant issued its fire policy to plaintiff covering a Cass county farmhouse in the sum of $1,500 until noon on January 9, 1928.

On June 2, 1926, at the request of said agent, defendant issued another fire policy on a farmhouse in Cass county and then advised the agent to decline further risks in Cass county.

On November 1, 1927, defendant mailed to the agent a letter in which were enclosed three expiration notices, one of which related to the policy here involved. The letter stated:

"We enclose farm expiration notices in connection with which we wish to express the hope that you will find it possible to forward fully completed and duly executed renewal applications if the business is still desirable."

In the printed portion of the notices was this statement:

"Please use your best efforts to secure signed application for renewal, if risk is still desirable."

On January 5, 1928, Mr. Townsend wrote defendant:

"The above policies [one of two being the one here involved] expire on the 9th, and you may issue renewal policies and am enclosing statements herewith covering present policies as stated thereon in case of [a] renewal is wanted.

"If it is necessary to secure new applications send me amount carried on different items in present policy."

The enclosed statements identified the policies, disclosed the total insurance in each, but not how divided, and some other information.

The letter was received by defendant at Chicago Saturday morning, January 7. Nothing was done. On Monday noon the original policy expired. At eight o'clock p. m. the house covered by it was destroyed by fire. Plaintiff mailed proof of loss to defendant on January 10, 1928. It was received on the 12th. On the same day defendant's superintendent of farm department, without knowledge of the loss or the receipt of the proof of loss, wrote a letter to Mr. Townsend, enclosing a copy of their letter to him of June 2, 1926,

wherein it declined further risks in Cass county and advised that it could not accept the business tendered by the letter of January 5.

In December, 1927, defendant gave Mr. Townsend notice of expiration of a farm policy in Douglas county, and later at his instance it gave a renewal binder pending the securing of a fully completed farm application.

Mr. Townsend testified that in writing the letter of January 5 he was acting for both parties but that perhaps at the particular moment he was acting for defendant.

The court found that the agent Townsend had implied authority to bind defendant to a renewal of said contract of insurance from the time of the expiration of the policy to the time when defendant might find time to act upon the request or application for renewal. It was also found that on the seventh day of January, 1928, the plaintiff and the defendant entered into an agreement and contract wherein and whereby defendant agreed to make, execute and deliver to plaintiff a renewal of said policy contract on the same terms and conditions, and in the same amounts (it covering other buildings) and for the same premium mentioned in said policy except as to the term thereof. The court found that defendant failed to carry out its said contract, and awarded plaintiff judgment for the amount of such alleged policy less the premium.

■ Implied authority meant actual authority established by circumstances. We will assume, without deciding, that the agent had such authority. In what way was it used? Nothing can be gained by commenting upon the agent's failure to call defendant's attention to its apparent change of policy when he received defendant's letter of November 1, 1927; nor of defendant's failure to advise before the policy expired that it did not wish the business.

We will also assume that defendant meant just what it said in the letter of November 1, 1927, and on the enclosures therein. Under this request Townsend was to "forward fully completed and duly executed renewal applications if the business is still desirable." The enclosure called for "signed application for renewal, if risk is still desirable." Perhaps the agent should have supposed that the

risk was not desirable because it was in Cass county. Obviously however defendant was reserving the right to decide whether the risk was desirable. Conditions may change during a period of three years. From plaintiff's most favorable view defendant was ready to consider the risk and solicited a signed application which presumably would give the information from which defendant could reach a conclusion satisfactory to it. Had such an application been furnished it would have stood as an offer which was subject to defendant's acceptance or rejection. Defendant never acquiesced in more. It had not made a definite unqualified offer. What did its agent do to make a contract? We must bear in mind that the knowledge of this dual agent acting as the sole representative of both parties at his end of the line is chargeable to both parties. State Bank of Morton v. Adams, 142 Minn. 63, 170 N. W. 925. He did nothing aside from writing the letter of January 5. The record in no way reflects his mental operations except as disclosed by this letter. He does not report to defendant that he had made with plaintiff a contract of the character found by the court or any other contract. Far from it. In substance he says to defendant, you may issue a new policy if you want the renewal. His letter is an offer. It shows a clear intention of having defendant make the decision of acceptance or rejection. The disclosed facts will not permit a reasonable inference that the agent had made a contract to insure or had agreed that plaintiff's property would be protected until a new policy was issued or until a decision was made by defendant. Indeed the letter negatives that idea. He did not furnish a signed application as had been suggested, but on the contrary he made his conditional request and said: "If it is necessary to secure new applications send me" information. He was apparently requesting the policy to be issued without the signed application. If so it was still an offer only.

When the offer reached defendant it apparently had no consideration until January 12, when it was rejected by one of defendant's representatives who had no knowledge of the receipt of the proof of loss. The delay of five days in acting upon the matter cannot under

the circumstances be construed as an acceptance of that which was in fact rejected on the fifth day. We are unable to find the necessary evidence to establish the making of the alleged contract for insurance.

Plaintiff relies strongly upon the case of Koivisto v. Bankers & M. F. Ins. Co. 148 Minn. 255, 181 N. W. 580, which is sufficiently distinguished from the case at bar by the single statement that in that case the agent took the plaintiff's application, received and receipted for the premium, and stated to the plaintiff that the insurance then went into effect; these statements were believed and relied upon by the plaintiff. Such vital agreement by the agent is not established by the evidence in this case.

■ The circumstances surrounding the Douglas county. policy relate to but a single instance. Where custom, habit or practice in business is to be relied upon as tending to establish an alleged fact and such custom, habit or practice are to be established by specific instances, they must be numerous enough to base an inference of systematic conduct. They must also have occurred under substantially similar circumstances, so as to be naturally accountable for by a system only and not as casual recurrences. They must be such as to indicate a general course of conduct. It merely rests upon the basis that a person is likely to do or not to do a thing as his custom, habit or practice. But a single instance cannot give rise to a probability that it would be carried out in every instance or in most instances. It is the regularity of such instances tending to manifest a uniform mode of dealing that gives probative value.

Reversed.