## CITY OF MINNEAPOLIS v. FIRST NATIONAL BANK & TRUST COMPANY OF MINNEAPOLIS.[1]

November 13, 1936.

No. 30,980.

[1]Reported in 269 N. W. 521.

*R. S. Wiggin,* City Attorney, and *John F. Bonner,* Assistant City Attorney, for appellant.

*Junell, Driscoll, Fletcher, Dorsey & Barker,* for respondent.

I. M. OLSEN, JUSTICE.

The plaintiff appeals from a judgment of nonsuit entered against it on motion by the defendant for judgment in its favor on the pleadings.

Prior to January 31, 1933, the First National Bank in Minneapolis and the First Minneapolis Trust Company were doing business in Minneapolis, one as a bank and the other as a trust company. On that date the two corporations were merged in a bank, First National Bank & Trust Company of Minneapolis, as successor to the two prior corporations. The matters involved in this action are dealings between the plaintiff and the two above named predecessors of the defendant. The defendant, the First National Bank & Trust Company of Minneapolis, took over all the liabilities of its predecessors. Where not otherwise indicated, we refer hereinafter to the defendant as being the party whose relations with the plaintiff, prior to January 31, 1933, are in question.

On January 11, 1929, the defendant's predecessors were designated as depositories for part of the funds of the city of Minneapolis. No later designation is shown. A dozen or more other banks and trust companies were designated as depositories at the same time. The defendant predecessor, instead of giving bonds to secure deposits, deposited with the city treasurer securities of an amount sufficient to secure deposits then or thereafter made.

The defendant agreed to pay interest on deposits on open account on average daily balances at the rate of two per cent per annum,

payable monthly at the end of each month. Funds were accordingly deposited, and interest thereon was paid monthly at the rate of two per cent per annum until June 15, 1931. In March, 1931, the defendant reduced the rate of interest payable on demand deposits generally from two to one and one-half per cent per annum, and on March 21, 1931, the defendant wrote and mailed the following letter to C. A. Bloomquist, city treasurer of plaintiff city:

"Under conditions which exist at the present time we are obliged to reduce the rate of interest which we are paying on demand deposits. The rates at which we are able to loan our money have been steadily decreasing, and we feel that it is impossible to continue paying a higher rate of interest on the City accounts than one and one-half per cent.

"On time deposit accounts we will pay two per cent for the reason that our reserve requirements are less than on demand deposits.

"This change in rate will go into effect on April 15, and we believe you will appreciate the necessity of such action."

Thereupon a conference was held at the bank with the city treasurer, the chairman of the ways and means committee of the city council, and others. As a result of that conference, the defendant agreed to continue the two per cent interest rate until June of that year, and interest was so paid until June 15, as already stated. On June 10, 1931, the defendant sent to the city treasurer the following letter:

"Under conditions which exist at the present time we are obliged to reduce the rate of interest which we are paying on deposits. The rates at which we are able to loan our money have been steadily decreasing, and we feel that it is impossible to continue paying two per cent on the City accounts.

"We have consequently changed the rate to 1½ per cent, which will go into effect on June 15th. We believe you appreciate the necessity of our action in this respect."

From that time until December 25, 1932, the defendant continued to pay interest on city deposits at the rate of one and one-half per cent per annum. On December 2, 1932, the treasurer and the

chairman of the ways and means committee of the city council again met with the officials of the bank and were informed that the defendant was obliged once more to reduce the rate of interest on demand deposits, from one and one-half per cent to one-half of one per cent per annum, and the following letter was then written and mailed to the city treasurer.

"In accordance with our conference today with you and Alderman O. J. Turner, Chairman of the Ways and Means Committee of the city council, wherein we outlined to you that under conditions which exist at the present time, we are obliged to reduce the rate of interest which we are paying on deposits. The rates at which we are able to loan money have been steadily decreasing and we feel that it is impossible to continue paying a higher rate on such accounts than one-half of one per cent.

"Therefore, commencing December 25, 1932, the rate of interest on the City of Minneapolis General Accounts, which are payable on demand will be one-half of one per cent, and the rate of interest on funds deposited on certificates of Deposit for three, six, nine or twelve month periods will be one per cent.

"We believe you appreciate the necessity of this action and thank you for your coöperation."

From December 25, 1932, until June 30, 1933, the defendant continued to pay interest to the city at the rate of one-half of one per cent per annum. It discontinued paying any interest on July 1, 1933, because of the fact that congress had enacted a law prohibiting national banks from paying any interest on deposits on open accounts.

In the present action the city seeks to recover from the defendant the difference between two per cent per annum and one and one-half and one-half of one per cent respectively from April 15, 1931, until and including June 30, 1933. The claims of the plaintiff, as shown by its assignments of error, are, in substance, that the defendant bank could not abrogate by notice the original alleged agreement to pay interest at two per cent per annum, and that the city treasurer did not have authority to agree or consent to

any change in the interest rate to be paid to the city. There is also an assignment of error that the court erred in holding that there were no material issues of fact raised by the pleadings.

Both parties seek a construction of relevant charter provisions, and these charter provisions are for consideration here.

The first provision called to our attention is section 14 of chapter IV of the city charter. The part applicable is as follows:

*"City Council to Have Control of City Finances and Property.*— The City Council shall have the management and control of the finances and all property of the city," (the balance of the section relates to real estate).

Section 29 of chapter V of the city charter provides that the city council shall at the beginning of each calendar year, and from time to time as may be necessary, designate and redesignate depositories for city funds; that the designated depositories shall give bonds with sureties to be approved by the city council, conditioned for the safekeeping and payment of funds deposited and interest thereon; that in lieu of such bonds the depository may furnish and deposit with the city treasurer certain classes of bonds and securities named in the section; that these bonds and securities must have a total market value of at least the maximum amount of money permitted to be deposited, and the securities shall be approved by the city council and be accompanied by a proper assignment, "to the end that such depository so depositing and assigning such securities shall and will safely keep and pay over to the city treasurer or his order on demand, free of exchange, all moneys deposited therein at any time while such bonds or securities shall be so deposited, with interest thereon at the rate agreed upon." Authority is further given to the treasurer to exchange on application securities so deposited for other securities of equal value and of the same class as by the section permitted. Interest on bonds and securities so deposited when paid shall be turned over to the depositories so long as they are not in default.

The next provision is section 33 of chapter V of the city charter:

*"City Treasurer to Secure Interest.*—It is hereby made the duty of the City Treasurer to make every endeavor to secure interest on

the public funds, consistent with their safekeeping, as herein provided; and to manage such funds in the interest of the city. But he shall in no case postpone or defer any payments after the same shall become due, in order to secure additional interest on such funds. At the close of each fiscal year, the City Treasurer shall make a statement of the total amount of interest on public funds received by him during the year, and such interest shall be credited to the Sinking fund, Current Expense fund or such other funds of the city as the City Council may from time to time direct."

■ The first question is as to the authority of the city treasurer to agree or consent to a reduction in the interest rate. The city treasurer is an elective executive officer of the city. He has such powers as are vested in him by the charter or by statute. The provisions of section 33 of chapter V of the charter, which make it his duty "to make every endeavor to secure interest on the public funds, consistent with their safekeeping, as herein provided, and to manage such funds in the interest of the city," and, "at the close of each fiscal year * * * make a statement of the total amount of interest on public funds received by him during the year," are broad enough to authorize the treasurer to agree as to interest rates and changes therein unless restricted by other charter provisions. No charter provisions are shown which point out anyone else than the city treasurer to make any agreement as to interest on funds deposited, and no charter provision, so far as shown, limits his authority in that respect. The power of the city council to manage and control city finances is a very general grant of power. The power of the treasurer to secure interest on city funds is specific. He cannot secure interest on daily balances without some agreement by the depository banks. He is limited to banks designated by the city council in which to deposit the funds. It is up to him to secure the best interest rates that he can get from such banks. There is no showing that he could have secured any better rates than were actually received. We hold that the authority of the city treasurer to consent to reduction of the interest rates is shown by the pleadings here in question.

Plaintiff's claims, in substance, are that when the depositories were designated in 1929, in the written assignments of the securities in place of bonds by each bank to secure the deposits, there was included a statement or agreement that interest on the deposits was to be at the rate of two per cent per annum on average daily balances, payable monthly. A further claim is that this agreement could not thereafter be changed or modified as to interest rate without joint action on the part of the city council and the bank or banks. The wording of these assignments is not in the record or pleadings. No copy thereof appears. From the arguments, briefs, and record, we gather that these assignments fixed no time for the duration of the designation of the banks, and fixed no time during which interest should be paid. The charter provision in reference thereto has already been quoted. It does require that there be a proper assignment of the securities deposited with the city treasurer in lieu of a bond. Such assignment serves the same purpose as a bond and is for the purpose of securing the safekeeping and repayment of funds deposited and interest thereon.

The city council, under its general power to manage and control city finances, we assume could have fixed, by ordinance or resolution, the interest rate to be charged on deposits of city funds. It would not have been a practical thing to do because, as is well known, bank interest rates on deposits change from time to time with the changing financial and business conditions in the state and community. It is well known that since 1929 interest rates on demand or short-term bank and government obligations have steadily decreased. Open checking accounts in banks generally have ceased to draw any interest.

The city charter provides, as stated, that the city council shall "at the beginning of each calendar year, and from time to time as may be necessary, designate or redesignate, so far as consistent with the best interests of the city," the depository banks. That indicates clearly that the designation made in 1929 was not intended or considered as a permanent designation or as binding either party for any definite time. Either party could terminate the relation created at any time. Either party could, at least after

the termination of one year, refuse to continue the relation except upon different terms. In other words, either party could require that if the relation of depositor and depository were to be continued the interest rate be changed. In the handling of these deposits and paying interest thereon, the bank dealt exclusively with the city treasurer. He had charge and custody of the city funds, made all the deposits and withdrawals, received the interest, and had full charge of the business with the bank. What the bank did, by the letters hereinbefore set out, was to notify the city treasurer that it was obliged to reduce the interest rate on such deposits to the rate therein stated and to fix the date when the reduced rate would go into effect. It was then optional with the treasurer to withdraw the deposit or to continue it at the reduced interest rate. It does not appear that any new assignments of securities by the bank were made after such notices were given or that the bank then or thereafter made any agreement as to interest rates, except as in said letters stated.

■ It is contended that the notice given to the city treasurer of the change in interest rates was not sufficient notice to the city; that it should have been given to the city council. While it appears that there were two conferences by the bank with the city treasurer and the chairman of the ways and means committee of the city council as to these interest rate reductions, the fact that this chairman, a member of the city council, took part in these conferences may not be important. The city treasurer being the officer in charge and custody of the city funds, and specifically designated to make these deposits and secure interest thereon, notice to him was notice to the city. While this exact question has not, so far as appears, been decided by this court, the following decisions are applicable. Where notice to the city of defects in streets or sidewalks is required, notice to an officer charged with the care of streets is notice to the municipality. Engel v. City of Minneapolis, 138 Minn. 438, 165 N. W. 278, L. R. A. 1918B, 647 (notice to police officer in charge of the precinct where the defect is located); Cunningham v. City of Thief River Falls, 84 Minn. 21, 86 N. W. 763; Miller v. City of St. Paul, 38 Minn. 134, 36 N. W. 271. So

also, in case of banks or other corporations, the corporation is charged with knowledge of facts known to an officer transacting its business and pertaining to matters within the scope of its business, especially where such officer himself is the one who has charge of and transacts the particular business. State Bank of Morton v. Adams, 142 Minn. 63, 170 N. W. 925; Farmers & M. State Bank v. Kohler, 159 Minn. 35, 198 N. W. 413.

Plaintiff suggests that no city officer ever accepted or expressly agreed to any reduction in the interest rate. The continuance of the deposits after notice of the reduction was a sufficient acceptance. Interest was paid monthly at the reduced rates and payments accepted without protest or objection, as far as here shown.

There is an allegation in the reply that these payments were accepted as payments on account only. But there is no allegation of any act or word on the part of the treasurer or anyone else to show such partial acceptance.

It is stated in plaintiff's brief that section 29 of chapter V of the charter requires that the assignments of the securities must contain the rate of interest agreed upon. The section does not expressly so provide. As already noted, it provides that there shall be a proper assignment of the securities "to the end" that the bank will safely keep the funds and pay them over to the city treasurer "with interest thereon at the rate agreed upon." This does not necessarily require the assignment to contain the rate. It does contemplate an agreement as to the rate, and such rate might very properly be stated in the assignment, as apparently was done, in the first instance, in this case. But there is nothing in this charter provision to prevent change or modification in the interest rate at a future time. The object of the charter provision is to require the bank to have at all times securities deposited of sufficient value to secure the money on deposit and interest thereon then or thereafter agreed upon. The city treasurer could at any time withdraw all deposits and demand an increase in interest rates as a condition to future deposits if financial conditions were such that a better rate could be obtained with equal safety in other depositories designated or to be designated by the city council.

 Where the depository relation is not for any fixed term, the bank may, by notice to the depositor, terminate the payment of interest or reduce the rate. It is then optional with the depositor to withdraw his deposit or to continue it at the reduced rate of interest or at no interest. State Nat. Bank v. Commonwealth, 129 Ky. 637, 112 S. W. 678; Bank of Commerce v. Harrison, 11 N. M. 50, 66 P. 460.

There are numerous other authorities cited in the briefs of each of the parties. We do not find it necessary here to cite and analyze them. We agree with the trial court that the facts material to a decision of the case, as disclosed by the pleadings, are undisputed and that the court properly ordered judgment in favor of the defendant on the pleadings.

Judgment affirmed.

