STANLEY BLUMBERG v. GORDON H. TAGGART AND ANOTHER.
AMERICAN NATIONAL INSURANCE COMPANY, RESPONDENT.[1]

July 3, 1942.

No. 33,163.

[1]Reported in 5 N. W. (2d) 388.

40

*David London* and *Jack Werner,* for appellant.

*Faegre & Benson, George D. McClintock,* and *Everett A. Drake,* for respondent.

JULIUS J. OLSON, JUSTICE.

Action to recover $1,200 from defendant Taggart on the basis of fraud practiced by him to plaintiff's loss in that amount. Liability against defendant insurance company is predicated upon the theory that $1,000 of this amount has been traced into its hands, and that because of Taggart's fraud this sum became "impressed with a trust in favor" of plaintiff. Taggart defaulted. A trial to the court between the insurance company and plaintiff resulted in findings for the company. Plaintiff's motion for amended findings or a new trial was denied, judgment was entered, and he appeals. We shall refer to the insurance company as the defendant.

There is no substantial dispute about the facts. They may be thus summarized: On July 8, 1939, one Minnie Mortensen applied to an agent of defendant for a policy of insurance, referred to as "a continuous premium deferred life annuity" policy. Her application and $1,000 in cash were turned over to the agent. By this payment all premiums for the full period of 21 years were fully paid. The agent with whom she dealt delivered the application and the money to Taggart, who was a general agent for defendant to the extent of being authorized to receive and receipt for money coming into his hands for his principal but not to withdraw any funds so received from the principal's depository, the Northwestern National Bank & Trust Company of Minneapolis. Taggart sent the application to the home office at Galveston, Texas, but retained the $1,000, converting it to his own use and saying nothing to his principal about the cash payment. On July 28, defendant, its officers at Galveston having no actual knowledge of its agent's perfidy, issued to Miss Mortensen a deferred annuity contract which provided for premium payments of $65.59 on the eighth day of July each year until premiums for 21 full years had been paid or until her prior death.

There is no question that plaintiff was defrauded by Taggart. The court so found, and that finding is not challenged. The fraudulent transaction occurred on or shortly prior to October 7, 1939. In that deal plaintiff gave Taggart a cashier's check for $1,200

payable to him. This transaction was a private one between Taggart and plaintiff. It did not in any way concern Taggart's principal and was entirely outside the scope of his employment. The check, which was made and delivered October 7, was promptly cashed by Taggart at the bank upon which it was drawn. He deposited to the credit of defendant, his principal, $1,000 of the currency received and sent to defendant at Galveston a duplicate deposit slip showing the credit of this "currency" deposit to defendant's account on that day. It bears this identification: "MORTENSEN, ANNUITY # 679633." The remaining $200 was pocketed by Taggart. Defendant, upon receipt of the deposit slip, on October 10 issued to Miss Mortensen its premium trust fund certificate, stating, in substance, that all the premiums provided for in her policy had been fully paid. The insurance policy and the trust certificate are in full force and effect. With regard to the $1,000 cash deposited to defendant's credit, the court found its position to be that of "a *bona fide* purchaser for value," and that it was not unjustly "enriched by said deposit." Plaintiff made no demand upon defendant for this sum until after he and Taggart had entered into a covenant not to sue, dated December 7, 1939. That was an agreement whereby Taggart agreed to repay to plaintiff, in monthly installments, the $1,200 of which he had been defrauded. It was to be "operative only if said schedule of payments" was "adhered to." Taggart paid only $200 and defaulted as to the remaining payments. The present suit was commenced in September 1940.

■ No doubt, as between the insured and defendant, the policy became operative as and when her money was delivered to and accepted by one authorized to receive it. Taggart was such an agent. Mason St. 1927, § 3757. As to her, his theft or embezzlement was a loss his principal should bear, since a principal is bound by the acts of his agent to the extent of the authority, expressed or implied, with which he has clothed him. But this case does not hinge upon the legal principles obtaining in such a case. Here, as we have seen, the deal between plaintiff and Tag-

gart is entirely outside defendant's field of operations and wholly aside and beyond his employment. His fraud upon plaintiff had nothing to do with any duty owed to his employer, nor was he, as to plaintiff, a representative of defendant. The problem is whether the money so wrongfully obtained by Taggart and directly traced to defendant is impressed with a resulting trust so that defendant, who had nothing to do with the original transaction and as a matter of actual fact knew nothing of it, should bear the loss, or, on the other hand, whether it is for the plaintiff to bear.

■ In Penn Anthracite Min. Co. v. Clarkson Sec. Co. 205 Minn. 517, 522, 287 N. W. 15, 18, we held:

"It is law that 'where the owner of property transfers it, being induced by fraud, duress or undue influence of the transferee, the transferee holds the property upon a constructive trust for the transferor.' Restatement, Restitution, § 166. That trust includes the proceeds of the property."

*Cf.* 25 Minn. L. Rev. 667, 710; 3 Scott, Trusts, § 469, pp. 2336, 2337; 26 R. C. L. 1236, and cases under note 1.

■ In American Ry. Exp. Co. v. Houle, 169 Minn. 209, 213, 210 N. W. 889, 890, 48 A. L. R. 1266, we held:

"The rule is well established that, where a constructive trust of embezzled funds comes into being for the protection of an injured party, it is not cut off by any transfer of the property or of other property substituted therefor until such property reaches the hands of a *bona fide* purchaser for value."

As to Taggart, there can be no question that he received plaintiff's property under a constructive trust and is liable to him as a trustee. Our statute recognizes the stated rule, Mason St. 1927, § 8089: "No implied or resulting trust shall be alleged or established to defeat or prejudice the title of a purchaser for a valuable consideration, and without notice of such trust." The following cases, amongst others, uphold the rule: Cochran v. Stewart, 21 Minn. 435, 438; MacLaren v. Cochran, 44 Minn. 255, 257, 46 N. W. 408; Newton v. Newton, 46 Minn. 33, 37, 48 N. W. 450; 18 Minn.

L. Rev. 366; 25 Minn. L. Rev. 674, 689; United States v. Dunn, 268 U. S. 121, 132, 45 S. Ct. 451, 69 L. ed. 876; 4 Bogert, Trusts & Trustees, § 881.

■ The court found that defendant "stands in the position of a *bona fide* purchaser for value" and "was not unjustly enriched" by the deposit made by Taggart to its credit in the designated bank. That defendant had no actual knowledge of Taggart's wrongdoing is abundantly shown by the record. In this situation it becomes important to determine whether Taggart's fraud, he having, of course, full knowledge of his own wrong, thereby created a situation whereby his knowledge also became that of his principal. We think it is well settled law that an agent's knowledge will not be imputed to his principal when he is engaged in an independent fraud. In such circumstances it cannot be supposed that he will inform his principal of it. In Rudd Lbr. Co. v. Anderson, 161 Minn. 353, 357, 201 N. W. 548, 550, we held that "when an agent commits an independent fraud, it cannot be supposed that he will inform his principal of it. Moreover, when he is engaged in perpetrating such a fraud, he is not acting within the scope of his employment. These are valid reasons for refusing to charge the principal with notice of the facts constituting the fraud." (Citing cases.) 3 C. J. S., Agency, § 269, notes 53, 54, and § 270, note 61; 2 Am. Jur., Agency, § 374; Restatement, Agency, § 282.

On this phase it is deemed important to consider the cases which form the bases upon which the authors of 2 Am. Jur., Agency, § 380, 3 C. J. S., Agency, § 269, and Restatement, Agency, § 274, rely in their formulation of the exceptions to or limitations on the rule we have discussed. The following are considered the leading cases: Curtis, Collins & Holbrook Co. v. United States, 262 U. S. 215, 43 S. Ct. 570, 67 L. ed. 956, was a suit brought by the United States to cancel certain patents to lands acquired under the Stone and Timber Act. One Holbrook, general manager and vice president of the company, actively took in hand the acquisition from the government of title to certain valuable timber lands. When the required proofs had been furnished and final approval of the entry

made, the individual entrymen conveyed their respective properties (215 U. S. 221, 222, 224, 43 S. Ct. p. 572, 67 L. ed. 956) "through a naked trustee * * * to the Company. * * * . The Company was in being and under the active management of Holbrook when these entries were being made and final proof submitted. Holbrook knew of the fraud practiced on the government in making the entries * * * and the circumstances as to the payment of money for expenses and bonuses out of moneys furnished" by him. He "was the sole agent acting for the Company in securing titles to land for it." The company and he were engaged "in a common adventure." He "was to procure the land for his principals at a stipulated profit for himself, they to furnish the money with which he could make the purchases for them." Naturally and properly, the court concluded: "Under these circumstances, we do not think the Company can be treated as a *bona fide* purchaser. It is charged with Holbrook's knowledge because *he was the sole actor for the Company in procuring the fraudulent patents.*" (Italics supplied.) The court carefully distinguished that case from American Nat. Bank v. Miller, 229 U. S. 517, 33 S. Ct. 883, 57 L. ed. 1310, upon which the company strongly relied, saying: "We do not think the case applicable here. The president of the Macon bank was engaged in something in which his interest was plainly independent of any agency of his on behalf of his bank." And that is just as plainly the situation in our case. Taggart's fraud practiced upon the plaintiff was wholly foreign to any duty owed by him to defendant. The deal between plaintiff and Taggart was their own private affair, wholly unconnected with Taggart's employment. The Miller case directly supports our case of Rudd Lbr. Co. v. Anderson, 161 Minn. 353, 201 N. W. 548, *supra.*

In Atlantic Cotton Mills v. Indian Orchard Mills, 147 Mass. 268, 17 N. E. 496, 9 A. S. R. 698, one Gray was the common treasurer of the two corporations involved in the suit. To make good and cover up his individual default, he drew checks upon one corporation payable to the other. He and he alone knew of the fraudulent origin of the checks and was the only officer of either corporation

having such knowledge. In this situation the court held (147 Mass. 273, 281, 17 N. E. 501, 9 A. S. R. 698):

"There is no doubt that a thief may use stolen money, or stolen negotiable securities before their maturity, to pay his debts; and in such case an innocent creditor may retain the payment. But this doctrine is inapplicable to the present case, for two reasons: in the first place, under the circumstances disclosed in the auditor's report, the plaintiff cannot be considered as an innocent creditor, that is, a creditor without notice; and moreover, the transaction did not amount to payment.

\* \* \* \* \*

"The fact that Gray, upon a private memorandum, charged himself with the sums fraudulently withdrawn by him is immaterial. This act was unauthorized, and the defendant is not bound by it. Entering it in this manner did not make the transaction a loan from the defendant to Gray."

In Mays v. First State Bank (Tex. Com. App.) 247 S. W. 845, 846, one Adams was the cashier of the bank, and as such "did all the loaning and directing the work in the bank; \* \* \* he assumed all of the responsibility and made all the loans, since the president was not active." It was shown in that case "without contradiction, that—'No director or any one interested in the bank had anything to do with taking the notes into the bank, except Adams.'" There Adams was a defaulter. The court, after stating the general rule as we have heretofore stated it, said (247 S. W. 846):

"But a different status is created where the officer deals both *with* and *for* the corporation; where he as an individual deals *with* himself as agent for the corporation and as agent deals *for* the corporation, *with* himself as an individual, in one and the same transaction. In such a case we cannot conceive otherwise than that he as agent knows everything that he as an individual knows." So that "where he is the sole representative of the corporation in the transaction, under such circumstances, the corporation is as

wise as the customer or client. He is the corporation and he is the customer or client."

The cases of National Turners Bldg. & Loan Assn. v. Schreit-mueller, 288 Mich. 580, 285 N. W. 497; Higgins v. Daniel, 5 Wash. (2d) 134, 105 P. (2d) 24, and Knobley Mountain Orchard Co. v. Peoples Bank, 99 W. Va. 438, 129 S. E. 474, 48 A. L. R. 459, are in accord with those here discussed but do not go beyond them. The Michigan case is interesting because the court there distinguishes but does not destroy prior cases dealing with this subject.

Summarizing the cases, the net result to be arrived at is this: Where the guilty knowledge of the agent comes to him as the *sole representative of his principal for whom he is acting and is the only one having such knowledge,* the principal must take the responsibility of the agent's acts as its own. He is, in such circumstances, the *alter ego* of his principal, since he only is the agency through whom the principal himself acted. In short, the exception or limitation to the rule which we think is applicable here rests upon the principle of the *legal identity* of the principal and agent.

The facts here presented and as found by the court clearly eliminate Taggart's misconduct in dealing with plaintiff from any connection with defendant. Its officers had no knowledge of any wrongdoing on his part. The affair with plaintiff was wholly his own. In that situation, fraud cannot be imputed to defendant. Taggart's payment of his debt to defendant did not transform him into something else than what he was when he received the money from plaintiff.

■ Restatement, Restitution, § 173(2), provides: "Except in the case of a transfer by an express trustee, a transfer of property other than an interest in land in satisfaction of or as security for a preëxisting debt or other obligation is a transfer for value." This principle has been adopted and followed by this court in the following cases, amongst others: Stevenson v. Hyland, 11 Minn.

128, 131 (198); Horton v. Williams, 21 Minn. 187, 193; Faulken-
burg v. Windorf, 194 Minn. 154, 158, 259 N. W. 802.

As pointed out in 3 Scott, Trusts, § 475, p. 2348:

"The distinction between what constitutes value for the purpose
of cutting off an express trust and what constitutes value for the
purpose of cutting off a constructive trust seems to be clearly
made in states in which the Uniform Sales Act is in force. In
§ 24 of the Act [Mason St. 1927, § 8399] it is provided that 'Where
the seller of goods has a voidable title thereto, but his title has
not been avoided at the time of the sale, the buyer acquires a good
title to the goods, provided he buys them in good faith, for value,
and without notice of the seller's defect of title.' In § 76 [Mason
St. 1927, § 8450] of the Act it is provided that ' "Value" is any
consideration sufficient to support a simple contract. An ante-
cedent or preëxisting claim, whether for money or not, constitutes
value where goods or documents of title are taken either in satis-
faction thereof or as security therefor.' It is clear that by the
terms of the Act the constructive trust which arises from the
obtaining of title to chattels by fraud is cut off by a transfer of the
chattels by the fraudulent person in satisfaction of or as security
for an antecedent debt if the transferee has no notice of the fraud."

■ That Taggart was indebted to defendant by virtue of his fail-
ure to account for Miss Mortensen's payment is clear, for he
withheld money belonging to his principal which he had no right
to retain. The following cases are helpful: Rhode Island Mut. L.
Ins. Co. v. Pierce (R. I.) 171 A. 243; American & Foreign Ins. Co.
v. Bacon (La. App.) 157 So. 305; Salem Traction Co. v. Anson,
41 Or. 562, 567, 67 P. 1015, 69 P. 675; Floyd v. Patterson, 72
Tex. 202, 10 S. W. 526, 527, 13 A. S. R. 787.

"Where the claimant's money is wrongfully used in discharging
a debt of the wrongdoer, the claimant is not entitled to recover
his money from the creditor if the creditor had no notice of the
wrong, since he is then in the position of a *bona fide* purchaser."
3 Scott, Trusts, p. 2455, § 513.

In support thereof are cited Babcock v. Standish, 53 N. J. Eq. 376, 33 A. 385, 30 L. R. A. 604, 51 A. S. R. 633; Ordway B. & L. Assn. v. Moeck, 106 N. J. Eq. 425, 151 A. 126.

An interesting and instructive case on this phase, since it is one of first impression, is London & County Banking Co. Ltd. v. London & River Plate Bank, Ltd. [1888] 21 L. R. Q. B. D. 535, where the headnote states the essential facts and the law as applied thereto, thus:

"Certain negotiable securities were stolen from the defendants by their manager, and came into the possession of the plaintiffs for value, and without notice of any fraud. Subsequently the manager obtained the securities from the plaintiffs by fraud, and restored them to the defendants, who did not know that the securities had been out of their possession. A portion of the restored securities were not the bonds actually stolen, but bonds of a like kind and value:—

"*Held,* that, in the absence of evidence to the contrary, it should be presumed that the defendants accepted the securities in discharge of their manager's obligation to restore them, and were therefore bona fide holders for value, and entitled to retain them."

Other cases are Nassau Bank v. Nat. Bank of Newburgh, 159 N. Y. 456, 54 N. E. 66; Bank of Charleston v. Bank of State, 13 Rich. (S. C.) 291. See 4 Bogert, Trusts & Trustees, § 889, p. 2585, and cases under note 57.

Judgment affirmed.

PETERSON, JUSTICE (dissenting).

The undeniable and indisputable fact is that solely through the acts of its agent defendant received funds which he held charged with a constructive trust for the benefit of plaintiff. Because of that fact, I think that the instant case is not controlled by the rules announced by the majority, but by a well settled exception to such rules which compels decision in favor of plaintiff.

The rule, which I think is applicable here, is well settled by at least 17 of our decisions, of which the majority takes no notice,

and by the overwhelming weight of authority. It is that a principal is chargeable with knowledge of facts known to his agent, who is his *sole* representative in the transaction, even though the agent is himself interested and guilty of wrongdoing.

In State Bank v. Adams, 142 Minn. 63, 170 N. W. 925, 927, the question was whether plaintiff was charged with notice that the note there sued on was fraudulent in its inception. Its president, who was its sole agent in the transaction for the acquisition of the note, had knowledge of facts charging him with notice of the fraud. As a stockholder and a member of the advisory committee of the corporation which transferred the note, he acquired knowledge of such facts. The transferor authorized plaintiff's president, if plaintiff purchased the note, to deduct $750 for his stock of the transferor corporation amounting to $500 face value. Plaintiff's president testified that in the acquisition of the note for plaintiff he "was acting 2,300 dollars worth for the bank and 750 dollars worth for" himself. The bank claimed, as here, that it was not chargeable with notice because the agent was engaged in an independent fraud in which he was personally interested. We said:

"A bank is chargeable with knowledge of facts known to an officer transacting its business and pertaining to matters within the scope of its business. This doctrine is based on the ground that it is the duty of the officer to communicate his knowledge to the bank, and it is to be presumed that he has performed this duty. * * * The rule of imputed notice does not apply, where the officer whose knowledge is sought to be imputed to the corporation is himself interested, and does not act for the corporation, but is connected with the transaction only in an adversary capacity, * * * for in such case it is to his own advantage not to impart his knowledge to the bank, and it is not to be presumed that he does so. *But there is no room for the application of this exception, where the officer interested is the sole representative of the bank in the transaction. In such case his knowledge is the knowledge of the bank.* * * * We hold that notice to Orth was notice to plaintiff bank." (Italics supplied.)

Many of the leading cases are cited to support the rule there announced.

In Darelius v. Commonwealth Mtg. Co. 152 Minn. 128, 134, 188 N. W. 208, 210, defendant was charged with the knowledge of fraud of its controlling stockholder at whose instance a note was transferred to it for his personal benefit. There, we said:

"Schafer of course had full knowledge of the facts, and, though personally interested, to the extent that he was the sole representative of the corporation, his knowledge was the knowledge of the corporation."

In Farmers & Merchants State Bank v. Kohler, 159 Minn. 35, 40, 198 N. W. 413, 415, the plaintiff bank was charged with knowledge of fraud of its officers who made fraudulent representations in the sale of a farm. We said:

"Although the De Walls were interested in the matter personally and were seeking to benefit themselves, yet they were the *sole* representatives of the bank in this transaction and under such circumstances their knowledge of the fraud was the knowledge of the bank." (Italics supplied.)

In Central Met. Bank v. Chippewa County State Bank, 160 Minn. 129, 199 N. W. 901, the defendant bank was charged with knowledge of its president which he gained as an officer and stockholder of a corporation whose paper the bank carried. The rule stated has been applied and followed in Citizens State Bank v. Wade, 165 Minn. 396, 206 N. W. 728; Union Central L. Ins. Co. v. Star Ins. Co. 178 Minn. 526, 227 N. W. 850; Solway State Bank v. School District, 179 Minn. 423, 229 N. W. 568; Anderson v. Iverson Outdoor Life, Inc. 187 Minn. 308, 245 N. W. 365; Peoples State Bank v. Ruppert, 189 Minn. 348, 249 N. W. 325; City of Minneapolis v. First Nat. B. & T. Co. 198 Minn. 280, 269 N. W. 521, 107 A. L. R. 1203; Penn Anthracite Min. Co. v. Clarkson Sec. Co. 205 Minn. 517, 287 N. W. 15. The rule was recognized in First Nat. Bank v. Carey, 153 Minn. 246, 190 N. W. 182; Matelski v. Farrell, 159 Minn. 466, 199 N. W. 227; Harwood State Bank v.

Hendrum Co-op. Elev. Co. 166 Minn. 400, 208 N. W. 24; Solway State Bank v. School District, 170 Minn. 83, 212 N. W. 25; Moorhead Inv. Co. v. Carlson, 177 Minn. 174, 224 N. W. 842; In re Trusteeship Under Will of Rosenfeldt, 185 Minn. 425, 241 N. W. 573; Lake Park Development Co. v. Steenberg Const. Co. 201 Minn. 396, 276 N. W. 651.

The weight of authority supports the rule. Curtis, Collins & Holbrook v. United States, 262 U. S. 215, 43 S. Ct. 570, 67 L. ed. 956; Connecticut F. Ins. Co. v. Commercial Nat. Bank (5 Cir.) 87 F. (2d) 968; Maryland Cas. Co. v. Queenan (10 Cir.) 89 F. (2d) 155; Pensacola State Bank v. Thornberry (6 Cir.) 226 F. 611; Tatum v. Commercial B. & T. Co. 193 Ala. 120, 69 So. 508, L. R. A. 1916C, 767; First Nat. Bank v. Reed, 198 Cal. 252, 244 P. 368; First Nat. Bank v. Town of New Milford, 36 Conn. 93; Morris v. Georgia L. S. & B. Co. 109 Ga. 12, 34 S. E. 378, 46 L. R. A. 506; First Nat. Bank v. Dunbar, 118 Ill. 625, 9 N. E. 186; Atlantic Cotton Mills v. Indian Orchard Mills, 147 Mass. 268, 17 N. E. 496, 9 A. S. R. 698; Tremont Trust Co. v. Noyes, 246 Mass. 197, 141 N. E. 93; First Nat. Bank v. Babbidge, 160 Mass. 563, 36 N. E. 462; National Turners B. & L. Assn. v. Schreitmueller, 288 Mich. 580, 285 N. W. 497; Brownell v. Ruwe, 117 Neb. 407, 220 N. W. 588; Holden v. New York and Erie Bank, 72 N. Y. 286; National Bank v. Waynesboro Knitting Co. 314 Pa. 365, 172 A. 131; Mays v. First State Bank (Tex. Com. App.) 247 S. W. 845; State Bank v. Payne, 156 Va. 837, 159 S. E. 163; Knobley Mountain Orchard Co. v. People's Bank, 99 W. Va. 438, 129 S. E. 474, 48 A. L. R. 459; Higgins v. Daniel, 5 Wash. (2d) 134, 105 P. (2d) 24.

In 2 Am. Jur., Agency, § 380 the rule is thus stated:

"A qualification of the rule that the knowledge of an agent engaged in an independent fraudulent act on his own account is not the knowledge of the principal has also been made where the agent, though engaged in perpetrating an independent fraudulent act on his own account, is the sole representative of the principal. It is held under such circumstances that the agent's knowledge is imputable to his principal, and that the case falls within the general

rule imputing the agent's knowledge to the principal. This qualification to the exception has been applied in cases involving agents and officers of corporations as well as in cases involving agents and other principals."

The question is most extensively discussed in Munroe v. Harriman National B. & T. Co. (2 Cir.) 85 F. (2d) 493, 111 A. L. R. 657, and annotation, which support the rule that the principal is charged with notice under the circumstances of this case. The annotation says (111 A. L. R. 665):

"While, as subsequently pointed out, there is some difference of opinion, or at least of statement, as to its true rationale or foundation, the great weight of authority supports the sole actor or sole representative doctrine, by virtue of which a corporation whose sole representative in a transaction as the adversely interested officer or agent is, at least if it asserts or stands upon the transaction either affirmatively or defensively, deprived of the benefit of the exception previously noted, in case of an officer or agent acting adversely, to the general rule of imputed notice."

To this weight of authority that of the Restatement, Agency, should be added. In § 274, comment *d*, the rule is thus stated:

"*d. Deposits to principal's account.* The rule stated in this Section applies where the agent, being authorized to deposit money to the principal's account, deposits money fraudulently obtained. In this case the principal holds the claim for money so deposited subject to the rights of the defrauded person and this is so even though the money was deposited to replace money which the agent had embezzled from the principal's account."

The case of Atlantic Cotton Mills v. Indian Orchard Mills, *supra,* is a leading one and illustrates the application of the rule. There one Gray, who was the treasurer of two corporations, stole money from one to make up funds which he had stolen from the other, which he placed in the funds of the latter without the knowledge of any of the officers of either company or the intervention of any other agent. The Massachusetts court held that the corporation

from which the money was stolen was entitled to recover the amount thereof from the one which received the same. The court said (147 Mass. 274, 17 N. E. 501, 9 A. S. R. 698):

"There was no transaction whatever between Gray and the plaintiff, in respect to the transfer of this money, in which the plaintiff was represented either in whole or in part by any other person than by Gray; and therefore, even though the transfer to the plaintiff has been made in bank bills or in gold coin, (which it was not,) the plaintiff must be deemed to have had knowledge of the true ownership, because in receiving the funds it acted solely through Gray's agency. It must be deemed to have known what he knew; and it cannot retain the benefit of his act, without accepting the consequences of his knowledge. The plaintiff cannot obtain greater rights from his act than if it did the thing itself, knowing what he knew."

The rule has been followed in numerous cases holding that, where an officer of a bank fraudulently appropriates funds of a third person and uses them in settling his own liabilities to the bank, the bank is liable to the party defrauded. In Knobley Mountain Orchard Co. v. People's Bank, 99 W. Va. 438, 129 S. E. 474, 48 · A. L. R. 459, *supra,* the cashier of the bank was the treasurer of plaintiff. He drew checks as plaintiff's treasurer which he used to pay overdrafts on defendant by himself and his brother. He was the sole officer or agent of defendant who had any knowledge that he stole money from plaintiff which he received as defendant's officer and agent. The court held that defendant was charged with its cashier's knowledge because he was its *sole* agent acting for and in its interest in the transactions. The cases are collected in the annotation at 48 A. L. R. 465, which points out that the weight of authority supports the rule.

I think that the majority has failed to distinguish the case of Curtis, Collins & Holbrook Co. v. United States and that of Atlantic Cotton Mills v. Indian Orchard Mills, except upon imma-

terial and irrelevant grounds. In Munroe v. Harriman National B. & T. Co. *supra,* the court said (85 F. [2d] 495):

"Thus, in Curtis, Collins & Holbrook Co. v. United States, 262 U. S. 215, 43 S. Ct. 570, 67 L. ed. 956, an agent employed to procure title to land, contrary to instructions procured it with knowledge of a fraud practiced on the owner. Although the agent had an interest adverse to his principal to conceal the defect in title because his own profits would increase with the number of titles procured, his knowledge was imputed to the principal. He was the sole actor for the corporate principal in procuring the fraudulent patents."

In First Nat. Bank v. Babbidge, 160 Mass. 563, 565, 36 N. E. 462, 464, the court made it clear that the Atlantic Cotton Mills case supports the rule that a principal is charged with its agent's knowledge and notice, where the agent is its sole representative in a transaction, even though the agent is personally interested, by saying:

"If Linley alone had acted in discounting the note and in placing the proceeds to his own credit, the bank would be bound by his knowledge of the circumstances under which he had obtained it from the defendants. Atlantic Cotton Mills v. Indian Orchard Mills, 147 Mass. 268 [17 N. E. 496, 9 A. S. R. 698]."

A sufficient reason for holding defendant is that it seeks to retain that which its agent wrongfully took from plaintiff. Notice aside, it is liable. The authorities support the view expressed in Munroe v. Harriman National B. & T. Co. *supra* (85 F. [2d] 495) that: "In such a case the principal is impaled on the horns of a dilemma. If he disclaims the agent's acceptance of the property for him as unauthorized, he has no ground to retain it; on the other hand, if he retains the property, he adopts the agent's act in procuring it and must in fairness take the accompanying burden of the agent's knowledge." Connecticut F. Ins. Co. v. Commercial Nat. Bank (5 Cir.) 87 F. (2d) 968, *supra;* Maryland Cas. Co. v. Queenan (10 Cir.) 89 F. (2d) 155 *supra;* Pensacola State Bank v.

Thornberry (6 Cir.) 226 F. 611, *supra;* Morris v. Georgia L. S. and B. Co. 109 Ga. 12, 34 S. E. 378, 46 L. R. A. 506, *supra;* Brookhouse v. Union Pub. Co. 73 N. H. 368, 62 A. 219, 2 L.R.A.(N.S.) 993, 111 A. S. R. 623, 6 Ann. Cas. 675; Annotation, 111 A. L. R. 665. In Tremont Trust Co. v. Noyes, 246 Mass. 197, 141 N. E. 93, 98, *supra,* the court said:

"Under these circumstances another principle of law becomes operative, namely, that where one undertakes to profit by the act of another as agent, he must adopt that act as a whole and take the bitter with the sweet. One cannot take the gains of a fraud without also bearing its burdens."

Aside from notice, plaintiff's equity is greater and he should recover. Agard v. People's Nat. Bank, 169 Minn. 438, 211 N. W. 825, 50 A. L. R. 629.

In any view of the case, it seems to me that plaintiff should recover.

HILTON, JUSTICE (dissenting).

I concur in the dissent of Mr. Justice Peterson.

MR. JUSTICE STONE took no part in the consideration or decision of this case.