## LOWDEN et al. v. NORTHWESTERN NAT. BANK & TRUST CO. OF MINNEAPOLIS, MINN.

### No. 10390.

Circuit Court of Appeals, Eighth Circuit.

Nov. 25, 1936.

Claude G. Krause, of Minneapolis, Minn. (Glenn Stiles, of Minneapolis, Minn., on the brief), for appellee-petitioner.

Edward S. Stringer, of St. Paul, Minn. (Marcus L. Bell and Daniel Taylor, both of Chicago, Ill., on the brief), for appellants-respondents.

Before SANBORN, WOODROUGH, and THOMAS, Circuit Judges.

PER CURIAM.

This case came on to be heard on November 21, 1936, upon a petition of the appellee for a modification of the decree and mandate of this court which would allow the court below to reopen the case for the purpose of determining the amount of interest to be added to the principal amount decreed to be due the appellants.

The facts out of which this controversy arose are stated in the opinion of this court which is reported in 84 F.(2d) 847. The Chicago, Rock Island & Pacific Railway Company was a depositor of the appellee bank. At the time the railway company filed its petition for reorganization under section 77 of the Bankruptcy Act (47 Stat. 1474) on June 7, 1933, it had on deposit in a checking account in the bank $36,908.72. On June 16, 1933, the bank notified the railway company of its intention to offset $45,-362.94 (the amount which the railway company had on deposit at the close of business on June 7, 1933) against bonds of the railway company owned by the bank. On June 19, 1933, the bank debited the account of the railway company in that amount. On June 23, 1933, the bank restored to the account of the railway company $5,611.32, making the net deduction $39,751.62. This amount was set off against the bonds of the railway company owned by the bank. The court below (11 F.Supp. 929), in a suit

by the trustees of the railway company, held that the bank was entitled to set off $36,908.72 against the bonds. The trustees appealed, and this court reversed the decree and remanded the case with directions to enter a decree in favor of the trustees for the full amount sued for, with interest and costs. The opinion of this court was filed July 27, 1936. Thereafter the appellee bank applied to the Supreme Court of the United States for certiorari; the application was denied (57 S.Ct. 109, 80 L.Ed. —), and the mandate of this court issued October 31, 1936.

The appellee now contends that the trustees are legally entitled to only ¼ per cent. interest upon the amount found to be due them from the bank, instead of 6 per cent. the legal rate in Minnesota, because there was a written agreement between the bank and the railway company, at the time the set-off was made, which required the bank to pay the lesser rate monthly upon average daily balances in the checking account of the railway company. This contention is based upon the proposition that, under the laws of Minnesota (section 7036, Mason's Minn.St.1927), the 6 per cent. rate applies only where there is no written contract for a lesser rate, that contracts bear the same rate of interest after they become due as before, and that a provision in any contract providing for an increase in the rate of interest after maturity works a forfeiture of the entire interest.

While the jurisdiction of this court to now modify the decree and mandate is questioned, we shall assume, without deciding, that the court has such jurisdiction, since we are satisfied that, upon the merits, the petition must be denied.

The case was tried in the court below under a stipulation which provided that if the bank had no right to make the set-off, "plaintiffs should have judgment as prayed for." The prayer of the plaintiffs was for the amount of the set-off with interest at 6 per cent. The decree of this court is in accordance with this stipulation. We shall assume, however, that the stipulation may be disregarded.

■ Treating the arrangement which existed between the bank and the railway company with reference to the payment of interest monthly upon average daily balances in the railway company's checking account as a written agreement, it is clear that that agreement related solely to moneys standing to the credit of the railway com-

pany in its checking account on the books of the bank, and had no relation whatever to moneys deducted therefrom by the bank without authority of the railway company. When the bank deducted from the deposit account of the railway company the amount which the bank applied upon the bonds of the railway company owned by the bank, it terminated the relation of depositary to the extent of the deduction. The railway company was deprived by the bank of the use of its account to the extent of the deduction, and the bank made use of this credit by applying it upon the bonds. There was no written agreement at any time between the railway company and the bank that the bank would pay any specified rate of interest upon moneys improperly deducted by the bank from the checking account of the railway company. Hence the bank was obligated to pay the legal rate upon any deductions made by it from the checking account which it had no right to make.

■ Moreover, on June 16, 1933, the National Banking Act of 1933 (48 Stat. 162) became effective. Section 11 (b) of that act (48 Stat. 181, see section 371a, tit. 12, U.S.C.A.) amended section 19 of the Federal Reserve Act, as amended, by adding the following:

"No member bank shall, directly or indirectly by any device whatsoever, pay any interest on any deposit which is payable on demand: Provided, That nothing herein contained shall be construed as prohibiting the payment of interest in accordance with the terms of any certificate of deposit or other contract heretofore entered into in good faith which is in force on the date of the enactment of this paragraph; but no such certificate of deposit or other contract shall be renewed or extended unless it shall be modified to conform to this paragraph, and every member bank shall take such action as may be necessary to conform to this paragraph as soon as possible consistently with its contractual obligations."

The appellee bank was a member of the Federal Reserve System. The deposit of the railway company was payable on demand. On June 20, 1933, the bank sent a letter to the railway company calling attention to this Act of Congress, and concluding:

"We, therefore, wish to advise you that under the provisions of this Act the payment of interest on your demand deposit

balances will be discontinued as of that date [June 16, 1933]."

We are of the opinion that after June 16, 1933, there was not in existence any valid written contract between the railway company and the bank which required the bank to pay, or entitled the railway company to receive, any interest whatever upon the checking account of the railway company.

The Supreme Court of Minnesota, in the case of City of Minneapolis v. First National Bank & Trust Company of Minneapolis (Minn.) 269 N.W. 521, opinion filed November 13, 1936, has held:

"Where the depositary relation is not for any fixed term, the bank may, by notice to the depositor, terminate the payment of interest or reduce the rate. It is then optional with the depositor to withdraw his deposit or to continue it at the reduced rate of interest or at no interest."

The alleged agreement between the bank and the railway company was indefinite as to time, and even under the theory of the appellee, was only a month to month contract. We have no doubt that it terminated on June 16, 1933, regardless of the proviso contained in the National Banking Act, hereinbefore quoted.

The petition is denied.